MARCELINO MINGACHOS, ADMINISTRATOR (ESTATE OF FRANK MINGACHOS) *v.* CBS, INC., ET AL.
(11968)

HEALEY, PARSKEY, SHEA, DANNEHY and BIELUCH, Js.

Argued January 9—decision released April 30, 1985

*Dennis G. Eveleigh,* with whom were *Nathan C. Nasser,* and, on the brief, *Keith A. Rubenstein,* for the appellant (plaintiff).

*J. Kevin Golger,* with whom, on the brief, was *George L. Holmes, Jr.,* for the appellees (defendants).

ARTHUR H. HEALEY, J. This appeal calls into issue the exclusivity of the Connecticut Workers' Compensation Act, General Statutes §§ 31-275 through 31-355.

On October 30, 1979, Frank Mingachos (the decedent) sustained injuries from an explosion while working on the Danbury premises of his employer, the named defendant, CBS, Inc. (CBS). On November 29, 1979, he died as a result of those injuries. On June 3, 1981, the plaintiff, Marcelino Mingachos, as administrator of

the decedent's estate, instituted an action in three counts seeking compensatory and punitive damages against CBS and several individual fellow employees of the decedent, Rocco Pennozza, Charles Joseph and Andrew Dodd.[1]

The first two counts were directed to CBS. They alleged, in substance, that the explosion and the decedent's injuries and death were caused by CBS' "violations" of certain enumerated Connecticut "statutory regulations" and federal Occupational Safety and Health Administration Act (OSHA) regulations, that the violations were "willful" and "reckless," and that "the natural and probable consequence reasonably to be anticipated . . . would be death or serious injury." The third count was directed to Pennozza, Joseph and Dodd. It also alleged in substance that the explosion and the decedent's injuries and death "were caused by and were the direct result" of the individual defendants' violation of the same Connecticut "statutory regulations" and federal OSHA regulations as alleged in the two earlier counts, that the violations were "wilful," and again that "[t]he natural and probable consequence reasonably to be anticipated . . . [therefrom] would be death or serious injury." The defendant CBS' answer to the first and second counts included the special defense of the Workers' Compensation Act (the act) and asserted the exclusivity of the act as a bar.[2] The special defense of the act was also

[1] On March 4, 1980, the plaintiff's representatives filed a workers' compensation claim against the defendant CBS, Inc. That defendant, through its workers' compensation insurance carrier, paid benefits on behalf of the decedent which included disability and medical payments and funeral expenses in the amount of $54,232.89.

[2] The special defense referred specifically to General Statutes § 31-284 of the Workers' Compensation Act. That section is captioned "Basic rights and liabilities" and provides in part: "(a) An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall

interposed to the third count, with the individual defendants asserting its exclusivity because the case did not fall within the exceptions of § 31-293a[3] of the act. Thereafter, the plaintiff filed his motion to strike the special defenses to all three counts "for the reason that said allegations do not constitute special defenses to an action for willful and intentional torts." The court, *Sullivan, J.,* denied the motion as to the first two counts and granted it as to the third count.[4]

Thereafter, a three count amended complaint was filed. The first two counts, as amended, now alleged that the explosion and the decedent's injuries and death

secure compensation for his employees as follows, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between employer and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter, provided nothing herein shall prohibit any employee from securing, by agreement with his employer, additional benefits from his employer for such injury or from enforcing such agreement for additional benefits."

[3] General Statutes (Rev. to 1979) § 31-293a of the Workers' Compensation Act, which is captioned "No right against fellow employee; exception," provided: "If an employee or, in case of his death, his dependent has a right to benefits or compensation under this chapter on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee except for negligence in the operation of a motor vehicle as defined in section 14-1 or unless such wrong was wilful or malicious. No insurance policy or contract shall be accepted as proof of financial responsibility of the owner and as evidence of the insuring of such person for injury to or death of persons and damage to property by the commissioner of motor vehicles required by chapter 246 if it excludes from coverage under such policy or contract any agent, representative or employee of such owner from such policy or contract. Any provision of such an insurance policy or contract effected after July 1, 1969, which excludes from coverage thereunder any agent, representative or employee of the owner of a motor vehicle involved in an accident with a fellow employee shall be null and void."

[4] In its decision, speaking to the first two counts, the court pointed out that the plaintiff "has merely alleged 'willful' and 'reckless' violations of safety statutes. Significantly, the plaintiff has not alleged an 'intentional' injury."

were caused by "CBS's violations and actions . . ." of certain enumerated Connecticut statutory regulations and OSHA regulations, that "[s]aid actions and violations" were, as to the first count, "wilful and intentional, and created a hazardous condition" and that they were, as to the second count, "reckless, and created a hazardous condition." As to each of these two counts, it was now alleged that despite "CBS' knowledge that such hazardous violations and conditions existed," it failed to correct them, it failed to warn its employees, and it failed to report them to certain governmental agencies as required by law. It was further alleged that this failure to correct, warn and report was, on the part of CBS, "intentional, malicious, and in willful and wanton disregard of the health of the plaintiff's decedent and caused his injuries and consequent death."[5]

The defendants thereafter filed their motion for summary judgment[6] in which they asserted that the plaintiff's claim was "barred by law." The motion also alleged that "[a]ll three counts . . . are based on the violations of the defendants of certain OSHA rules and regulations and are barred by Connecticut General Statutes Section 31-369 (b) and 29 United States Code Section 653 (b) (4)."[7] The court, *Maiocco, J.,* granted

---

[5] The third count of the amended complaint remained in substance the same as its counterpart in the original complaint.

[6] By stipulation of the parties, it was agreed that the motion for summary judgment applied to the plaintiff's amended complaint.

[7] Affidavits were filed in support of and in opposition to the plaintiff's motion for summary judgment.

29 U.S.C. § 653 of the Occupational Safety and Health Act is captioned "Geographic applicability; judicial enforcement; applicability to existing standards; report to Congress on duplication and coordination of Federal laws; workmen's compensation law or common law or statutory rights, duties, or liabilities of employers and employees unaffected" and provides in part:

"(b) (4) Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment."

the summary judgment motion as to all three counts. This appeal followed.[8]

On appeal, the plaintiff claims that the trial court erred: (1) in overruling his motion to strike the special defenses to the first and second counts of the original complaint and (2) in granting summary judgment for the defendants on all three counts of his amended complaint.

The basic issue in this appeal is whether an employer has immunity from suit under General Statutes § 31-284 of the Workers' Compensation Act when the employer is sued in intentional tort. The manner, however, in which the case was presented and argued to two judges in the trial court, one who decided the plaintiff's motion to strike special defenses to the original complaint and one who rendered summary judgment for the defendants on the later filed amended complaint, requires individual treatment.[9] "We review this case on the theory upon which it was tried and upon which the trial court decided [each motion]." (Citations omitted.) *Fuessenich* v. *DiNardo*, 195 Conn. 144, 151, 487 A.2d 514 (1985). The basic issue does, however, permeate both motions which the parties have briefed

General Statutes § 31-369 of the Connecticut Occupational Safety and Health Act is captioned "Application of chapter" and provides in part:

"(b) Nothing in this chapter shall be construed to supersede or in any manner affect any workers' compensation law or to enlarge, diminish or affect in any manner common law or statutory rights, duties or liabilities of employers or employees, under any law with respect to injuries, diseases or death of employees arising out of and in the course of employment."

[8] The plaintiff properly preserved his right of appeal on the trial court's decisions on the motion to strike, *Sullivan, J.,* and the motion for summary judgment, *Maiocco, J.* See Practice Book § 3001. We note that the defendants have never claimed that *Royce* v. *Westport,* 183 Conn. 177, 439 A.2d 298 (1981), precludes consideration of the plaintiff's appeal from the trial court's decision on the motion to strike the special defenses, which he has carefully preserved, briefed, and argued. Under the circumstances, we need not in this case explore the effect of *Royce* on our analysis of the claims presented by the plaintiff.

[9] Each judge filed a written memorandum of decision.

separately although both with some overlapping. Accordingly, our discussion of the act will likewise permeate our determination of both motions.

## I

We first address the plaintiff's claims against the defendant employer. To do so we must necessarily examine the scope of General Statutes § 31-284, the "exclusivity" provision of the Connecticut Workers' Compensation Act.

"The purpose of the workmen's compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer." (Citation omitted.) *Jett* v. *Dunlap,* 179 Conn. 215, 217, 425 A.2d 1263 (1979). The act is to be broadly construed to effectuate the purpose of providing compensation "for an injury arising out of and in the course of the employment regardless of fault." *Klapproth* v. *Turner,* 156 Conn. 276, 279, 240 A.2d 886 (1968); *Stapf* v. *Savin,* 125 Conn. 563, 565, 7 A.2d 226 (1939). Under typical workers' compensation statutes, employers are barred from presenting certain defenses to the claim for compensation, the employee's burden of proof is relatively light, and recovery should be expeditious. In a word, these statutes compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation. See *Iverson* v. *Atlas Pacific Engineering Ltd.,* 143 Cal. App. 3d 219, 191 Cal. Rptr. 696 (1983); 81 Am. Jur. 2d, Workmen's Compensation § 2 (1976); see generally Larson, "The Nature and Origins of Workmen's Compensation," 37 Cornell L.Q. 206 (1952). The purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes. See *Adzima*

v. *UAC/Norden Division,* 177 Conn. 107, 117, 411 A.2d 924 (1979).[10]

Under General Statutes § 31-284 (a) an "employer" within the scope of the act is not liable in "any action for damages on account of *personal injury* sustained by an employee arising out of and in the course of his [or her] employment or on account of death resulting from *personal injury* so sustained . . . ." (Emphasis added.) The act mandates that the term "[p]ersonal injury . . . shall be construed to include, in addition to *accidental* injury which may be definitely located as to the time when and the place where the *accident* occurred, an injury to an employee which is causally connected with his employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease as herein defined." (Emphasis added.) General Statutes § 31-275 (8); see *Plainville* v. *Travelers Indemnity Co.,* 178 Conn. 664, 669–70, 425 A.2d 131 (1979). "Every word in a legislative enactment is presumed to have meaning. *State ex rel. Kennedy* v. *Frauwirth,* 167 Conn. 165, 168, 355 A.2d 39 (1974)." *State* v. *Freedom of Information Commission,* 184 Conn. 102, 107, 441 A.2d 53 (1981). We have recognized that "courts do not torture words to import ambiguity where the ordinary meaning leaves no room for it . . . ." *Heffernan* v. *Slapin,* 182 Conn. 40, 46, 438 A.2d 1 (1980).

[10] For a thoughtful overview of the genesis and early days of workers' compensation in Connecticut, see Grillo, "Fifty Years of Workmen's Compensation – An Historical Review," 38 Conn. B.J. 239 (1964).

It has also been written that "[t]he most revolutionary modification of the common law of torts appeared in the form of Workmen's Compensation Acts. . . . Workmen's compensation legislation established almost a complete substitute for the common law of torts, as it affected the liability of industrial employers to their employees. Eliminating, as it did, the necessity of fault as a basis for liability and the fault of the worker, except in its extreme form, as a bar to recovery, the major economic risk of industrial accidents was shifted from the employee to the employer and his insurance carrier on the theory that industry initially and the consumer ultimately could better absorb the costs of such accidents than the individual victims thereof." 1 Harper & James, Torts (1956), pp. xlii–xliii.

Under the act, *"in addition to* accidental injury," the definition of "personal injury" or "injury" clearly encompasses any other specified injuries "causally connected" with employment. (Emphasis added.) General Statutes § 31-275 (8). The act's coverage is necessarily broad in scope, encompassing more than merely injuries resulting from "accidents," giving that word its plain meaning. See General Statutes § 1-1; *Rivera* v. *I. S. Spencer's Sons, Inc.*, 154 Conn. 162, 164, 223 A.2d 808 (1966); 81 Am. Jur. 2d, Workmen's Compensation § 29, p. 725 (1976).

We have recently recognized a narrow exception to the exclusivity of the act. In *Jett* v. *Dunlap,* supra, we held that an employee's action claiming intentional assault by another employee "identified as the alter ego" of the employer would not be barred by § 31-284. Id., 219. This "alter ego" exception may be applicable in instances in which "the assailant is of such rank in the corporation that he may be deemed the alter ego of the corporation under the standards governing disregard of the corporate entity." Id.[11] *Jett,* which involved an assault upon an employee by his work supervisor, does not, however, avail the plaintiff in this case.

The plaintiff would have us construe § 31-284 so that this provision would not bar actions at law against employers in cases such as the one now before us. He points to the statement in *Jett* v. *Dunlap,* supra, 218, that "[a]n intentional tort committed upon one employee by another, which causes personal injury aris-

---

[11] In elucidating the alter ego theory we applied in *Jett* v. *Dunlap,* 179 Conn. 215, 425 A.2d 1263 (1979), we took care to point out that "[t]here is a distinction between an assault directly committed or authorized by the employer and an assault committed by a supervisory employee." Id., 218. Moreover, we made it clear that attribution of corporate responsibility was "appropriate" if the *alter ego* predicate was met but that it was "inappropriate" where the actor was merely a foreman or supervisor, as was the assailant in that case. Id., 220.

ing out of and in the course of his employment, is covered by the compensatory provisions of the Workmen's Compensation Act." Going on, he also refers to the dicta in *Jett* v. *Dunlap,* supra, 221, where we said: "Where such wilful or serious misconduct is engaged in by an employer, as identified by the standard we set forth today, then a plaintiff may pursue common-law remedies." It is therefore clear, he continues, that by this later language we have created for intentional torts committed by an employer an exception to the exclusivity defense of the act for injuries sustained in the course of a worker's employment and so, when injury results from the commission of an intentional tort by an employer, an employee "is permitted to pursue remedies beyond those contemplated by the Workers' Compensation Act."

In the present appeal the plaintiff is really requesting that we extend judicially the *Jett* exception to § 31-284 to include injuries to employees resulting from "intentional," or "wilful," or "reckless" violations by the employer of safety standards established pursuant to federal and state laws, such as OSHA. In the absence of any such legislative direction, we decline to do so for a number of reasons that we set forth as follows.

First, our decisional law constrains us from giving such an expansive reading of the terms "intentional," "wilful," or "reckless" because they have been previously defined in the context of common law tort actions. We begin our analysis here by pointing out that it is generally agreed that workers" compensation laws were not intended to shield an employer from common law liability for injuries he intentionally inflicted upon his employee. See *Shearer* v. *Homestake Mining Co.,* 557 F. Sup. 549, 553 (D.S.D. 1983), aff'd, 727 F.2d 707 (8th Cir. 1984); 2A Larson, Workmen's Compensation Law (1976) §§ 68.10 and 68.13. It will be useful to put such terms as "wilful," "intentional" and

"reckless" in context considering the plaintiff's core claim that the Connecticut Workers' Compensation Act is not a defense available to the defendant employer in this tort action.

In his description of intentional tortious conduct, Dean Prosser has said: " 'Intent' is the word commonly used to describe the desire to bring about the physical consequences [of an act] . . . . Intent, however, is broader than a desire to bring about physical results. It must extend not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what he does." Prosser, Torts (4th Ed. 1971) § 8. Similarly, according to the second Restatement of Torts, "intent" refers "to the consequences of an act rather than to the act itself"; 1 Restatement (Second), Torts § 8A, comment (a) (1965); and therefore "[t]he word 'intent' . . . denote[s] that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to follow from it." 1 Restatement (Second), Torts § 8A (1965).[12] Thus, the concept of "intent" in relation to tortious conduct has reference to the consequences of the act rather than to the act itself. One court has thus stated: "But a high risk or probability of harm is not equivalent to the substantial certainty without which an actor cannot be said to intend the harm in which his act results." *Shearer* v. *Homestake Mining Co.,* supra, 559. In terms of intentional tort then, the use of the word "intent" in allegations "is not a talisman that can change the allegations into colorable claims of true intentional torts." *Keating* v. *Shell Chemical Co.,* 610 F.2d 328,

---

[12] One court in a workers' compensation case has discussed the term "substantially" in the Restatement phrase "substantially certain"; see *Reagan* v. *Olinkraft, Inc.,* 408 So. 2d 937 (La. Ct. App. 1981); and has concluded that " '[s]ubstantially' means about, practically, nearly, almost, essentially or virtually [and] Webster's includes 'sure' and 'inevitable' among its definitions of 'certain.' " (Citations omitted.) Id., 940.

332 (5th Cir. 1980). Nor is it any more so with the allegations of a "wilful" act, as Justice Cardozo stated in *Messersmith* v. *American Fidelity Co.,* 232 N.Y. 161, 165–66, 133 N.E. 432 (1921): "Every act, if we exclude, as we must, gestures or movements that are automatic or instinctive, is willful when viewed in isolation and irrespective of its consequences. . . . A driver turns for a moment to the wrong side of the road, in the belief that the path is clear, and deviation safe. The act of deviation is willful, but not the collision supervening."

To bypass the exclusivity of the act, the intentional or deliberate act or conduct alleged must have been designed to cause the injury that resulted.[13] Such a concept is nothing new to our jurisprudence. Only recently, drawing on our earlier cases, we said: " 'A wilful and malicious injury is one inflicted intentionally without just cause or excuse. It does not necessarily involve the ill will or malevolence shown in express malice. Nor is it sufficient to constitute such an injury that the act resulting in the injury was intentional in the sense that it was the voluntary action of the person involved. Not only the action producing the injury but the resulting injury must be intentional.' *Rogers* v. *Doody,* 119 Conn. 532, 534, 178 A. 51 (1935). 'A wilful or malicious injury is one caused by design. Wilfulness and malice alike import intent. . . . [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances.' *Sharkey* v. *Skilton,* 83 Conn. 503, 507–508, 77 A. 950 (1910). The intentional injury aspect may be satisfied if the resultant bodily harm was the direct and natural consequence of the intended act. *Alteiri* v. *Colasso,* 168

---

[13] One recognized treatise on the law of torts opines: "A result is intended if the act is done for the purpose of accomplishing such a result or with knowledge that to a substantial certainty such a result will ensue." 1 Harper & James, Torts (1956) § 3.3, p. 216.

Conn. 329, 334, 362 A.2d 798 (1975)." *Markey* v. *Santangelo,* 195 Conn. 76, 77–78, 485 A.2d 1305 (1985). It is also well recognized that "[a]lthough the line between a highly foreseeable risk and an intentional tort often grows thin, it has always been deemed to exist: 'On the other hand, the mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent. The defendant who acts in the belief or consciousness that he is causing an appreciable risk of harm to another may be negligent, and if the risk is great his conduct may be characterized as reckless or wanton, but it is not classed as an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. Apparently the line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable man would avoid, and becomes a substantial certainty.' " *Keating* v. *Shell Chemical Co.,* supra, 332, quoting Prosser, supra, 32.

Alleged misconduct deemed to be "reckless," as the plaintiff also claims, differs from intentional misconduct. "While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it." 3 Restatement (Second), Torts § 500, comment f (1965). "It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from a *substantial certainty* without which he cannot be said to *intend* the harm in which his act results." (Emphasis added.) Id.

A second reason that the § 31-284 (a) exclusivity rule bars common law actions for damages against employers for safety violations is the present statutory scheme itself. We have previously recognized that in construing the Workers' Compensation Act, this court "makes

every part operative and harmonious with every other part insofar as is possible . . . ." *Bahre* v. *Hogbloom*, 162 Conn. 549, 554, 295 A.2d 547 (1972). "The entire enactment must be examined and its parts reconciled and made operative so far as possible." *Kulis* v. *Moll*, 172 Conn. 104, 111, 374 A.2d 133 (1976), quoting *United Aircraft Corporation* v. *Fusari*, 163 Conn. 401, 411, 311 A.2d 65 (1972).

In 1978, the General Assembly amended the act to include a provision that allows a greater amount of compensation to be paid to an employee "who suffers any injury or illness caused by his employer's violation of any health or safety regulation . . . after such violation has been cited in accordance with [OSHA or Connecticut OSHA] and not abated within the time fixed by the citation . . . ." Public Acts 1978, No. 78-360, § 1, codified at General Statutes § 31-307.[14] This provision buttresses the defendant employer's position that the legislature did not intend to abrogate the exclusivity principle in a case such as that presented here.

It is axiomatic that compensation in common law tort serves a two-fold purpose: deterrence of socially undesirable conduct and compensation to those persons

---

[14] General Statutes § 31-307 provides in pertinent part: "If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, there shall be paid to the injured employee a weekly compensation equal to sixty-six and two-thirds per cent of his average weekly earnings at the time of the injury; but the compensation shall in no case be more than the maximum weekly benefit rate set forth in section 31-309 for the year in which the injury occurred, except that any employee who suffers any injury or illness caused by his employer's violation of any health or safety regulation adopted pursuant to chapter 571 or adopted by the Federal Occupational Safety and Health Administration and listed in 29 CFR, chapter XVII, after such violation has been cited in accordance with the provisions of section 31-275 or the provisions of the Occupational Safety and Health Act of 1970, 84 Stat. 1601 (1970), 29 USC 658 and not abated within the time fixed by the citation provided such citation has not been set aside by appeal to the appropriate agency or court having jurisdiction, shall receive a weekly compensation equal to seventy-five per cent of such employee's average weekly earnings at the time of such injury or illness. . . ."

harmed by such conduct of others. See generally Prosser, Torts (4th Ed. 1971) §§ 1, 3; 1 Harper & James, Torts (1956), pp. xxxix–xlii. In pertinent part § 31-307 fulfills both of these purposes as the legislature obviously intended. First, the increase in workers' compensation from 66⅔ to 75 percent of average weekly earnings permitted thereunder was designed to provide an incentive to employers to make the corrections necessary to ensure safe workplaces for their employees. 21 S. Proc., Pt. 6, 1978 Sess., pp. 2342–43; 21 S. Proc., Pt. 7, 1978 Sess., pp. 2726–29; Hearings before the Joint Standing Committee on Labor and Industrial Relations, 1978 Sess., pp. 102, 109, 118–22, 125, 130–31, 149–50. This increase in compensation to employees for work related injuries due to safety violations within the scope of § 31-307 was a remedy provided them by the legislature within the confines of the act itself. The "seventy-five per cent" compensation rate allowable in such § 31-307 cases thus serves as a recent component of the legislative recognition of the on-going social compact of the existing workers' compensation system in this state for injuries within the scope of its coverage. See 21 S. Proc., Pt. 6, 1978 Sess., pp. 2342–43; 21 S. Proc., Pt. 7, 1978 Sess., pp. 2728–29; Hearings before the Joint Standing Committee on Labor and Industrial Relations, 1978 Sess., pp. 102, 109, 125.

We note that the added remedy under § 31-307, which the legislature contemplated would be *the* remedy available to an employee injured due to the employer's unsafe working conditions, only applies to cases in which a covered employee is injured as a result of the employer's failure to take appropriate corrective measures *after* it has received a citation under either General Statutes § 31-375 or federal OSHA for a violation due to the offending condition. Because the issuing of the citation begins the running of the period of

the employer's potential § 31-307 workers' compensation liability, the employer must be on notice that the unsafe condition exists for the "seventy-five per cent" provision to apply. A fortiori, even injuries that occur as a result of unsafe conditions of which the employer has actual notice in the form of a citation are within the scope of the act, and thus the statutory scheme of the act serves to bar common law actions in such cases.

The third reason that we decline to construe § 31-284 as not barring such actions is that to do so would in this case usurp the legislative function.[15] One court, in a workers' compensation case has said that "[a] damage suit as an alternative or additional source of compensation, becomes permissible only by carving a judicial exception in an uncarved statute. . . . Neither moral aversion to the employer's act nor the shiny prospect of a large damage verdict justifies interference with what is essentially a policy choice of the Legislature." *Azevedo* v. *Abel*, 264 Cal. App. 2d 451, 459, 70 Cal. Rptr. 710 (1968); see note, "Intentional Employer Torts: A Matter for the California Legislature," 15 U.S.F.L. Rev. 651 (1981); but see note, "Exceptions to the Exclusive Remedy Requirements of Workers' Compensation Statutes," 96 Harv. L. Rev. 1641 (1983).

---

[15] Several states have "intentional" employer injury statutes as part of their workers' compensation laws. See, e.g., Cal. Labor Code §§ 4553, 4553.1 (Deering 1976); Mass. Ann. Laws ch. 152, § 28 (Michie/Law. Co-op. 1976) (requiring that compensation payments be doubled); Wis. Stat. Ann. § 102.73 (West 1973).

Under Cal. Labor Code § 4553 (Deering 1976), which requires that the compensation award be increased by one-half with a statutory maximum if the worker's injury resulted from the employer's "serious and willful misconduct," such misconduct has been defined as "more than negligence, however gross. The type of conduct necessary to invoke the penalty . . . is that of a ' " '*quasi* criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its possible consequences.' . . .'" ' " (Citation omitted.) *American Smelting & Refining Co.* v. *Workers' Compensation Appeals Board*, 79 Cal. App. 3d 615, 620, 144 Cal. Rptr. 898 (1978).

We also decline to follow *Mandolidis* v. *Elkins Industries, Inc.,* 246 S.E.2d 907 (W. Va. 1978), in which an action similar to this plaintiff's was held not to be barred by the exclusivity principle under West Virginia law. See also *Blankenship* v. *Cincinnati Milacron Chemicals, Inc.,* 69 Ohio St. 2d 608, 433 N.E.2d 572, cert. denied, 459 U.S. 857, 103 S. Ct. 127, 74 L. Ed. 2d 110 (1982). Unlike our act, the West Virginia Workers' Compensation Act, which the *Mandolidis* court was interpreting, expressly allowed tort actions where the employee's injury was the result of a "deliberate intention" of the employer to injure the employee. W. Va. Code § 23-4-2 (1978).[16] Although we construe our Workers' Compensation Act so as not to bar tort actions against an employer that deliberately intended to injure its employee, we agree with the conclusion that the reasoning of the *Mandolidis* court was "strained"; *Houston* v. *Bechtel Assoc. Professional Corporation,* 522 F. Sup. 1094, 1097 (D.D.C. 1981); and, like *Blankenship,* was a "distinctly out-of-line holding." 2A Larson, Workmen's Compensation Law (1976) § 68.13, p. 13-8 n.10.1;[17] see also *Hatcher* v. *Bullard Co.,* 39 Conn. Sup. 250, 256, 477 A.2d 1035 (1984). We note that in 1983 the West Virginia legislature "sharply curtailed" the rule in *Mandolidis.* 2A Larson, supra, § 68.13, p. 21

---

[16] W. Va. Code § 23-4-2 at that time provided in relevant part: "If injury or death result to any employee from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child or dependent of the employee shall have the privilege to take under this chapter, and shall also have cause of action against the employer, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter."

[17] Larson makes the same observation concerning *Blankenship* v. *Cincinnati Milacron Chemicals, Inc.,* 69 Ohio St. 2d 608, 433 N.E.2d 572, cert. denied, 459 U.S. 857, 103 S. Ct. 127, 74 L. Ed. 2d 110 (1982), where the Ohio Supreme Court adopted "the distinctly out-of-line" view that employees and their spouses can sue their employer in tort for the intentional use of chemicals it knew were harmful, and for failure to warn and to report the dangerous conditions to federal and state agencies as required. 2A Larson, Workmen's Compensation Law (1976) § 68.13, p. 13-19 n.10.1.

n.10.1 (Sup. 1984).[18] Therefore, "[s]ince the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot, under the almost unanimous rule, [the exceptions being *Mandolidis* v. *Elkins Industries, Inc.,* supra, and *Blankenship* v. *Cincinnati Milacron Chemicals, Inc.,* supra,] be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury." (Footnotes omitted.) 2A Larson, supra, § 68.13.

## II

In light of our discussion of the scope of § 31-284 (a) in barring actions against an employer for job related injuries, we take up first the plaintiff's claim that the trial court erred in overruling his motion to strike the special defenses of the Workers' Compensation Act to the first and second counts of his original complaint. We find no error.

A motion to strike challenges the legal sufficiency of a pleading. Practice Book § 152; *Blake* v. *Levy,* 191 Conn. 257, 258 n.1, 464 A.2d 52 (1983); *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.,* 190 Conn. 528, 530 n.2, 461 A.2d 1369 (1983). It replaced the demurrer in our practice. Practice Book § 151. Like the demurrer, it admits all *facts* well pleaded; it does not admit *legal conclusions or the truth or accuracy of opinions* stated in the pleadings. *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* 179 Conn. 541, 545, 427 A.2d 822 (1980); *McAdam* v. *Sheldon,* 153 Conn. 278, 282, 216 A.2d 193 (1965). The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admit-

[18] See W. Va. Code § 23-4-2 as amended in 1983 by H.B. 1201.

ting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail. *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* supra. Where, as in this instance, the motion to strike challenges the legal sufficiency of the special defense of the act to the original complaint, we must consider the complaint in the same posture as did the trial court. See *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.,* supra, 530 n.2.

In overruling the plaintiff's motion to strike and in determining that the act was the exclusive remedy, the trial court noted that the plaintiff had merely alleged "willful" and "reckless" violations of state and federal safety regulations and "significantly" had "not alleged an 'intentional' injury."[19] The trial court thus rejected the plaintiff's arguments that § 31-284 (a) did not bar a tort action alleging wilful or reckless conduct on the part of the employer and that if § 31-284 (a) bars an employee from workers' compensation "when the personal injury has been caused by the wilful and serious misconduct of the injured employee . . ." then the employer should be barred from raising the act's exclusivity as a defense when the employer is likewise charged with wilful, reckless or serious misconduct. The trial court maintained that this same argument had been rejected by this court in *Jett* v. *Dunlap,* 179 Conn. 215, 218, 425 A.2d 1263 (1979), and also refused to follow *Mandolidis* and *Blankenship,* decisions from other jurisdictions. Because the act provides the exclusive remedy to the employee for conduct alleged in the origi-

---

[19] We have examined, as we may, the memoranda of law filed in the trial court on the motion to strike. See *Roche* v. *Fairfield,* 186 Conn. 490, 505 n.14, 442 A.2d 911 (1982); *Karp* v. *Urban Redevelopment Commission,* 162 Conn. 525, 527, 294 A.2d 633 (1972). The plaintiff's memorandum states that the violations alleged in the first count are "wilful" and that those alleged in the second count are "reckless."

nal complaint, the trial court's denial of the plaintiff's motion to strike the special defense was not clearly erroneous. Practice Book § 3060D.

We also note that in those two counts the plaintiff based his action on the defendant's claimed violations of statutory regulations promulgated under both Connecticut and federal "OSHA" statutes. Neither Connecticut nor federal law provides that alleged violations of OSHA can be the basis of a private right of action "with respect to injuries, diseases or death of employees arising out of and in the course of employment." See General Statutes § 31-369 (b) and 29 U.S.C. § 653 (b) (4); *Jeter* v. *St. Regis Paper Co.,* 507 F.2d 973, 976–77 (5th Cir. 1975); annot., 35 A.L.R. Fed. 461 (1977). We have said, however, that regulations promulgated under OSHA are admissible, if applicable, as *evidence* in personal injury cases of the standard of care. *Wendland* v. *Ridgefield Construction Services, Inc.,* 184 Conn. 173, 181, 439 A.2d 954 (1981); see *Van Steensberg* v. *Lawrence & Memorial Hospitals,* 194 Conn. 500, 506, 481 A.2d 750 (1984). It would then appear that both the state and federal OSHA acts do not intend to "supersede or in any manner affect" existing rights, duties or liabilities of affected parties for those referenced matters arising out of or in the course of employment. Accordingly, a complaint which does not allege a legal duty but only alleges violation of federal or state OSHA regulations is vulnerable to a motion to strike.

In sum, in the light of the applicable law, the Workers' Compensation Act was properly pleaded as a special defense to the first two counts of the original complaint. The trial court, therefore, recognizing the exclusivity of the act, correctly denied the motion to strike the special defenses.

### III

We turn now to the plaintiff's claim that the trial court erroneously granted the defendants' motion for

summary judgment. The party moving for summary judgment " 'has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law.' " *D.H.R. Construction Co.* v. *Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980). Because the burden of proof is on the moving party, the facts presented must be viewed in the light most favorable to the party opposing the motion. *Evans Products Co.* v. *Clinton Building Supply, Inc.,* 174 Conn. 512, 516, 391 A.2d 157 (1978). The party opposing such a motion must recite facts in accordance with Practice Book § 381. *Citizens National Bank* v. *Hubney,* 182 Conn. 310, 312, 438 A.2d 430 (1980). Supporting and opposing affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Practice Book § 381; *Citizens National Bank* v. *Hubney,* supra; *Evans Products Co.* v. *Clinton Building Supply, Inc.,* supra, 514.

After the trial court's action on the motion to strike, the plaintiff filed an amended complaint. The first two counts, which repeated many of the allegations of the original complaint, now alleged the following: That the explosion and the decedent's injuries and death were caused by "CBS's actions and [violations] . . ." of certain enumerated Connecticut statutory regulations and OSHA regulations, that "said actions and violations" were, as to the first count, "willful and intentional, and created a hazardous condition" and that they were, as to the second count, "reckless, and created a hazardous condition." As to each of these two counts, it was now alleged that despite "CBS' knowledge that such hazardous violations and conditions existed," it failed to correct these conditions and violations, it failed to warn its employees, including the plaintiff's decedent,

of them, and it failed to report them to certain governmental agencies as required by law. It was then further alleged that this failure to correct, warn and report was, on the part of CBS, "intentional, malicious, and in willful and wanton disregard of the health of the plaintiff's decedent and caused his injuries and consequent death."[20] The defendant employer again interposed the act as a special defense to the first two counts.

Thereafter, all the defendants moved for summary judgment on all three counts. Claiming that the plaintiff's claim is "barred by law," their motion alleged that "[a]ll three counts . . . are based on the violations of the defendants of certain OSHA rules and regulations and are barred by Connecticut General Statutes Section 31-369 (b) and 29 United States Code Section 653 (b) (4). . . ."[21] The trial court granted summary judgment, pointing out that, as to the first two counts, the language of the act in § 31-284 (a) was broad enough to encompass allegations of intentional misconduct and concluding that the most favorable reading of those counts required the conclusion that the act was a bar. In granting summary judgment on the third count, it recognized the thrust of § 31-293 (a), but pointed out that federal and state OSHA violations do not give rise to a private right of action. Moreover, the allegations of the amended complaint sound solely in violation of federal and state OSHA regulations, quite apart from, as the defendants claim, the existence of any legal duty. Both the federal and state OSHA statutes provide that such regulations may not be used to create a private cause of action for injuries arising out of or in the course of employment. 29 U.S.C. § 653 (b) (4) and General

[20] The allegations of the third count of the amended complaint, which was again directed to the individual employee defendants, remained in substance the same as the third count in the original complaint.

[21] The parties filed affidavits and memoranda of law.

Statutes § 31-369 (b); see *Jeter* v. *St. Regis Paper Co.,* 507 F.2d 973 (5th Cir. 1975); *Wendland* v. *Ridgefield Construction Services, Inc.,* 184 Conn. 173, 439 A.2d 954 (1981). We find no error in the granting of summary judgment.

We reaffirm what we have said earlier in this opinion concerning the purpose, ambit and interpretation of the act in our review of this summary judgment claim. The additional allegations made by the amended complaint do not serve to take any of its counts beyond the exclusivity of the act. We do note that even with the additional allegations each count still only makes out claims of violations of federal and state OSHA regulations quite apart from alleging any legal duty violated by any of the defendants.

The act provides the exclusive remedy to employees sustaining work related injuries or death from such injuries "caused by the negligence or wrong of a fellow employee . . . unless such wrong was wilful or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle . . . ." General Statutes § 31-293a.[22] "Although the legislative history of § 31-293a is not especially revealing"; *Dias* v. *Adams,* 189 Conn. 354, 359, 456 A.2d 309 (1983); the legislature apparently intended to distinguish "simple negligence on the job" from wilful or malicious wrong caused by a co-worker. Id. [23]

---

[22] See footnote 3, supra.

[23] In *Dias* v. *Adams,* 189 Conn. 354, 359 n.3, 456 A.2d 309 (1983), we referred to the following legislative history of General Statutes § 31-293a: "12 H. R. Proc., Pt. 9, 1967 Sess., pp. 3813, 4035, remarks of Representative Paul Pawlak: 'Section 5. This section stops third party suits against fellow employees since such employee usually is unable to meet any judgment involving serious injuries. However, the section specifically permits suits against fellow employees where the injury or death was the result of wilful or malicious wrong by such fellow employee or involves the operation of a motor vehicle. We are here trying to make sure that a fellow employee cannot ordinarily be sued for simple negligence on the job, but

In this motion for summary judgment, affidavits were filed. Practice Book § 381. Each defendant employee gave his affidavit personally, specifically disavowing, inter alia, any "willful intent" to violate any OSHA regulation and each indicating that on the day in question he had spent time in the same area where the accident involved occurred. On the other hand, the only affidavit submitted by the plaintiff was one signed by his attorney, which, after referring to certain attached, unverified, OSHA records, averred that "[t]hese exhibits indicate that the employer was aware of the need for ventilation where the explosion occurred; that the lack of ventilation presented a dangerous condition"; and that "[t]he employer did nothing to correct the need for ventilation until after the accident which killed the decedent." The record before us on this motion for summary judgment does not disclose that the plaintiff put into dispute the statements of the employees in their affidavit that each had no intent to injure the decedent. There was no genuine issue of material fact. Rather, with the exclusivity of the act, an issue of law emerged and summary judgment was properly granted on all counts of the amended complaint.

There is no error.

In this opinion the other judges concurred.

---

we do not believe that he should be protected against wilful or malicious wrong, nor do we believe he should be protected if the employee is injured as a result of a motor vehicle accident.' "