[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION TO STRIKE
On March 2, 1989, the plaintiffs, Robert J. Murphy, Jr. Robert J. Murphy, Sr., and Sandra Murphy, filed a seven-count complaint against four defendants, including the third-party plaintiffs, Francis T. James, Kenneth E. Wood, Jr., and Jack A. James (hereinafter Camissa-James). The complaint alleges that on or about May 5, 1986, Robert J. Murphy, Jr. (hereinafter Murphy) suffered personal injuries arising out of a one vehicle motorcycle accident. The complaint further alleges that Murphy lost control of his motorcycle when he reached a defective portion of the highway, causing him severe injuries.
The complaint alleges that Camissa-James, pursuant to a contract with the defendant Town of East Windsor, "was in the process of performing excavation work and sewer line installation work along various portions of Scantic Road (State Route 191)," prior to and at the time of the accident. The complaint further alleges that the negligence of Camissa-James caused the defect in the roadway.
In its amended third-party complaint, filed August 5, 1991, Camissa-James alleges that the third-party defendants, James A. Thompson, Robinson W. Buck, and Lawrence F. Buck (hereinafter Buck Buck), entered into a written contract with the Town of East Windsor "to do all of the engineering CT Page 296 work necessary to study, design, administer, supervise and inspect the construction and installation of certain intercepting sewers, pumping stations and lateral sewers in the Town of East Windsor. . . ." Camissa-James alleges that it performed its work under the supervision and direction of Buck Buck.
Camissa-James further alleges that the defective condition of the road was due to Buck Buck's active and primary negligence, that the negligence was the direct and immediate cause of the accident, that Buck Buck had exclusive control of the situation, and that Camissa-James had no knowledge of Buck Buck's negligence, had no reason to anticipate it, and reasonably relied on Buck Buck not being negligent. Accordingly, Camissa-James alleges that if it is held liable to Murphy, Buck Buck is liable to Camissa-James for indemnification.
On October 4, 1991, Buck Buck filed a motion to strike Camissa-James' amended third-party complaint. Pursuant to Practice Book 155, Buck Buck has filed a memorandum of law in support of the motion to strike and Camissa-James has filed a memorandum of law in opposition thereto.
The function of a motion to strike "is to test the legal sufficiency of a pleading." Ferryman v. Groton, 212 Conn. 138,142, 561 A.2d 432 (1989). "An attack upon the sufficiency of an impleader complaint should be made by a motion to strike." Commissioner v. Lake Phipps Land Owners Corporation,3 Conn. App. 100, 102 n. 2, 485 A.2d 580 (1985).
The motion to strike "admits all facts well pleaded." Mingachos v. CBS, Inc., 196 Conn. 91, 108-09, 491 A.2d 368
(1985). The court "must take the facts alleged favorably to the pleader and view those facts in a broad fashion, not strictly limited to the allegations but also including the facts necessarily implied by and fairly probable under them." Zeller v. Mark, 14 Conn. App. 651, 654. 542 A.2d 752 (1988) (citations omitted). "[I]f facts provable under the allegations would support a . . . cause of action," the motion to strike must be denied. Alarm Applications Co. v. Simsbury Volunteer Co., 179 Conn. 541, 545, 427 A.2d 822 (1980).
In its memorandum of law in support of the motion to strike, Buck Buck argues that in order to sufficiently state a claim for indemnification, Camissa-James must allege the the existence of an independent legal relationship with Buck Buck. Buck Buck argues that Camissa-James failed to allege such a relationship in the third-party complaint because there was no contractual relationship between Camissa-James and CT Page 297 Buck Buck.
In its memorandum in opposition, Camissa-James argues that it is not required to allege an independent legal relationship in order to adequately allege a claim for indemnification. Nevertheless, Camissa-James argues that even assuming that an independent legal relationship is a required element of an indemnification claim, such a relationship was sufficiently pled.
"[A] party is entitled to indemnification, in the absence of a contract to indemnify, only upon proving that the party against whom indemnification is sought either dishonored a contractual provision or engaged in some tortious conduct." Burkert v. Patrol Plus of Naugatuck, Inc., 216 Conn. 65, 74,579 A.2d 26 (1990). In a claim for indemnification based on tort, "reimbursement is warranted only upon proof that the injury resulted from the `active or primary negligence' of the party against whom reimbursement is sought." Id.
 Such proof requires a plaintiff to establish four separate elements: "(1) that the other tortfeasor was negligent; (2) that his negligence, rather than the plaintiff's, was the direct, immediate cause of the accident and injuries; (3) that he was in control of the situation to the exclusion of the plaintiff; and (4) that the plaintiff did not know of such negligence, had no reason to anticipate it, and could reasonably rely on the other tortfeasor not to be negligent."
Id. (citations omitted).
In Atkinson v. Berloni, 23 Conn. App. 325, 328,580 A.2d 84 (1990), the Appellate Court added the fifth requirement that "in order to be entitled to indemnification from a joint tortfeasor, the party seeking indemnification must establish that the alleged indemnitor owed that party a duty based on an independent legal relationship."
Recently, there has been a split of authority as to whether Atkinson should be followed. See Downs v. Torres, 4 Conn. L. Rptr. No. 19, p. 635 (September 23, 1991, Hennessey, J.) (court followed Atkinson and held that third-party plaintiff failed to allege sufficient independent legal relationship); Schofield v. Bic Corporation, 4 Conn. L. Rptr. No. 6, p. 177 (June 24, 1991, Fuller, J.) (court followed Atkinson in striking third-party complaint); CT Page 298 Johnson v. Greenwood Terrace Condominium Association, 3 Conn. L. Rptr. No. 19, p. 631 (April 15, 1991, Fuller, J.) (court granted motion to strike cross-complaint where no independent legal relationship was alleged); Sandstrom v. Murray, 2 Conn. L. Rptr. No. 20, p. 664 (May 13, 1991, Hendel, J.) (court followed Atkinson, holding that no independent legal relationship existed between the parties); but see, Commercial Union Insurance Co. v. City of New Haven, 3 Conn. L. Rptr. No. 18, p. 592 (April 10, 1991, Dorsey, J.) (court declined to follow Atkinson, holding that an independent legal relationship is not required for a claim for indemnification.
In Atkinson, supra, 326, the plaintiffs, the driver and passenger of a motorcycle, sued the defendant Berloni, driver of the car they collided with, and defendant Clark, driver of another car who negligently signaled Berloni to make a left turn. The defendant Berloni filed a cross-claim against defendant Clark, seeking indemnification. Id. The court held that "mplicit in indemnification cases is the requirement of an independent legal relationship between the indemnitor and the indemnitee giving rise to a special duty." Id. 327.
Assuming that Atkinson were to govern, then Camissa-James has adequately pled a claim for indemnification. In the third-party complaint, Camissa-James alleges that Buck Buck "directed, administered, and supervised the contract work," including the "excavation, covering and repavement of the accident site." (See Amended Third-Party Complaint, pp. 4-5). Although Camissa-James did not allege a contractual relationship between it and Buck Buck, it did allege that both were hired by the Town of East Windsor and that Buck Buck directly supervised Camissa-James' operations. In viewing these facts in a broad manner and in favor of Camissa-James, an independent legal relationship has been alleged.
Further, the relationship between indemnitor and indemnitee in this case is sufficiently distinguishable from the relationship in Atkinson. As the court stated in that case: "The contact between Berloni and Clark was random and unanticipated. By signaling Berloni to pass in front of her, Clark did not assume a special duty toward Berloni, other than the general duty of a motorist to use reasonable care." Id., 330.
In the present case, the relationship between Camissa-James and Buck Buck was not random or unanticipated. Both were hired, although independently, by the Town of CT Page 299 East Windsor to work together on a sewer project. Specifically, Buck Buck was hired to direct and supervise this project, including the work of Camissa-James.
The motion to strike is denied because Camissa-James has alleged an independent legal relationship sufficient to state a claim for indemnification.
JOHN F. WALSH, J.