[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONON MOTION FOR SUMMARY JUDGMENT
On September 2, 1991, while walking along the sidewalk in front of 343 North Main Street in Suffield, Connecticut, the plaintiff, Janice S. MacArthur, claims to have tripped and fallen due to the uneven height of the sidewalk. As a result of that fall, the plaintiff claims to have suffered injuries to her knee and her fingers.
In the instant lawsuit, the plaintiff seeks to recover damages for her injuries from three defendants: the Town of Suffield; the owner of the land over which the sidewalk in question passes; and the State of Connecticut. In the third count of her complaint, she alleges, more particularly, that the State of Connecticut is responsible for her fall and resulting injuries under General Statutes Sec. 13a-144, the defective highway statute, because the portion of sidewalk on which she fell lies within the State highway system, and thus is the State's responsibility to maintain.
The defendant State of Connecticut has moved this Court for summary judgment, contending that the undisputed facts of record clearly establish that it had no legal duty to keep the sidewalk in question in repair, and thus no legal responsibility for the plaintiff's injuries. For the following reasons, the Court agrees with the State and concludes that its Motion for Summary Judgment must be granted.
 I
Summary judgment will be granted if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Connecticut Practice Book Sec. 384; Lees v. Middlesex Insurance Co.,21 Conn. 644, 650 (1991). The moving party has the burden of showing that it is entitled to judgment as a matter of law. Mingachos v. CBS, Inc., 196 Conn. 91, 111 (1985).
 II
The State of Connecticut is immune from suit unless it consents to be sued by the passage of appropriate legislation explicitly waiving its sovereign immunity.Duguay v. Hopkins, 191 Conn. 222, 227 (1983). Statutes CT Page 7667 waiving sovereign immunity must be strictly construed in favor of the State. General Statutes § 13a-144 provides as follows:
 Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the commissioner of transportation to keep in repair . . . may bring a civil action to recover damages sustained thereby against the commissioner in the superior court.
Because this statute effects a limited waiver of sovereign immunity, it must be strictly construed in favor of the State.
To recover damages against the State under Section13a-144, a person who claims to have been injured "through the neglect or default of the State or any of its employees by means of a defective . . . sidewalk" must plead and prove that the sidewalk in question was one "which it is the duty of the commissioner of transportation to keep in repair." Id. Under longstanding Connecticut case law, such a duty does not extend to every sidewalk which is constructed with the boundaries of the State highway system, but only to those sidewalks or portions thereof over which the State has assumed control. Moleske v.MacDonald, 109 Conn. 336, 341 (1929).
The reason for this limitation is as follows: The State's responsibility to maintain roads within the State highway system is based upon its overriding interest in promoting and facilitating the safe, efficient movement of vehicular traffic from town to town throughout the State. To promote that interest, the State routinely acquires rights-of-way along its public highways so that it can readily gain access to them for the purpose of maintaining, repairing, and where necessary, improving them.
When, by contrast, a town builds a sidewalk, its quite different purpose is to serve the needs of local residents by affording them a safe pedestrian thoroughfare on which to move about the town. Though for reasons of convenience, sidewalks are frequently laid out in close proximity to CT Page 7668 public highways, they are typically kept physically separate from them in order that pedestrians will neither interfere with nor be endangered by the vehicular traffic thereon.
Thus it is that despite their close proximity to one another, State roads and town sidewalks have traditionally been separately maintained by the separate governmental units whose interests they serve: the former by the State, the latter by municipalities. Absent any indication in the text or legislative history of the defective highway statute that that traditional division of responsibility was to be disturbed, our Supreme Court has ruled as follows that responsibility for the maintenance of local sidewalks must ordinarily be shouldered by the towns:
 We discover no purpose and we conceive it contrary to the policy of the State reflected in its legislation, to interfere with or modify the obligations of towns for any roads or other avenues of travel, which are of only local concern. Sidewalks are of this character. They serve local convenience almost wholly and have no relation to, nor do they contribute to, the facilitating of that public travel which the State aims to serve by the establishment of state aid and trunk line roads between the towns and across the State . . . . We are [therefore] satisfied that the [defective highway] statute . . . did not impose on the commissioner any legal obligation for the condition of the sidewalk [there] in question.
Id. at 341, 343.
In reaching this result, the Moleske Court did not declare that the State could never be made responsible for the defective condition of a local sidewalk, but only that it could not be made so responsible merely because the sidewalk was built within the technical boundaries of a State road. In fact, the Court expressly reserved judgment on whether the commissioner would have a legal obligation for the condition of a local sidewalk if it were shown that the State had "laid out, constructed, reconstructed or maintained" the walk. Id. at 343. CT Page 7669
In the years since Moleske was decided, the Supreme Court has often been called on the decide whether, on the facts of a particular case, the State should be held responsible for the defective condition of a sidewalk as an exception to this general rule. In those cases, the rule has emerged that such responsibility cannot be imposed unless the State has assumed control over that portion of the sidewalk on which the plaintiff claims to have been injured.
Thus in Griffin v. Berlin, 130 Conn. 84, 87 (1943), the Supreme Court ruled that the town of Berlin could not fairly be held responsible for the defective condition of a sidewalk which was built so close to the travelled portion of the highway as, in effect, to be a part thereof. The Court there distinguished Moleske as follows:
 In the Moleske case the sidewalk was constructed of tar and was separated from the wrought portion of the highway and nothing had been done either by the town or the state highway commissioner to divide it from the rest of the roadway. The shoulders of a highway, while not designed for ordinary vehicular traffic, are intended for use when need arises. Minacci v. Logudice, 126 Conn. 345, 348, 11 A.2d 354. They are a part of the wrought portion of the highway and, in the case of a state highway, control over them is necessarily in the state highway commissioner; he, if anyone, would be liable for a defective condition arising in them. [Citation omitted]. An obligation on the part of the town to respond in damages to a pedestrian injured by a defective condition in the shoulder of a state highway would necessarily imply a control by the town over the place where the injury occurred, and this would be directly contrary to the intent of the statutes which place a control over state highways in the highway commissioner.
Similarly, in Alston v. New Haven, 134 Conn. 686
(1948), the Supreme Court ruled that the State was responsible for the plaintiff's fall upon a municipal sidewalk, because the hole which caused her fall was one of two which had been drilled in the sidewalk by the State to CT Page 7670 serve as flagpole holders outside a State-leased office building. In reaching its conclusion, the Alston Court observed as follows:
 The constant use of one of the flagpole holes by the State and the construction of both by it show beyond question that it exercised control over them. The fact that it was a lease rather than an owner [of the land over which the sidewalk passed] is immaterial. Possession and control are the decisive factors. [Citations omitted].
Id. at 689.
Later, in Hornyak v. Fairfield, 135 Conn. 619 (1949), the Court restated the general rule and its exception as follows in ruling that a town was responsible for injuries sustained in a fall on a local sidewalk.
 This Court [has] held that the statutes dealing with state highways and the duties of the highway commissioner were concerned with vehicular traffic and the incidents thereof, that sidewalks are subjects of purely local interest and that the statutes did not impose upon the commissioner any legal obligation for the condition of . . . [local] sidewalk[s] . . . [I]n the case at bar, the state laid the curbs and the defect was in "the outer edge of the sidewalk as it rested on top of the curb," while in the Moleske case the state had done nothing with the sidewalk. This is not a valid distinction. The defect was still in a sidewalk which was not constructed by the state and of which the town had retained the exclusive supervision and control . . . . The State was not chargeable under the statute with maintenance of the sidewalk and had not in fact assumed control. The decision [to hold the town liable] was [therefore] correct under Moleske v. MacDonald. . . .
Against this background, the central question raised by this Motion is whether or not there is a genuine issue of material fact as to the State's claimed lack of control over the portion of sidewalk on which the present plaintiff CT Page 7671 fell. Absent facts suggesting that such control had indeed been assumed, then in the absence of any general obligation to repair local sidewalks which lie within its rights-of-way along State highways, the State will be entitled to judgment as a matter of law.
In support of her claim on this issue, the plaintiff has not offered evidence that the State of Connecticut built the sidewalk on which she fell, or that it ever took any affirmative steps to maintain, repair, reconstruct or improve it. Instead, she has simply offered to prove that: (1) as the owner of a right-of-way over the land on which the sidewalk was built, the State had retained for itself the power to require persons wishing to do work within right-of-way to secure encroachment permits; and (2) on at least one documented occasion, the State assumed responsibility for removing two trees from a different portion of that right-of-way, some distance away and across the street from where the plaintiff claims to have fallen.
The retention of the power to require encroachment permits from persons wishing to perform work within a right-of-way along side a State highway cannot reasonably be understood as an assumption of plenary control over all sidewalks within that right-of-way. The requirement of permits is entirely consistent with the State's fundamental reason for acquiring the right-of-way in the first place: to ensure that State personnel will have ready access to the highway in order to maintain, repair and improve it, as necessary, and thereby to foster the safe, efficient flow of vehicular traffic thereon. Pursuant to this overriding responsibility, the commissioner must naturally curtail or forbid certain activities within its right-of-way in order that they not disrupt the flow of vehicular traffic on the adjacent highway or impede State efforts to keep the highway safe and clear. However, the exercise of such oversight responsibility to prevent the disruption of vehicular traffic does not naturally connote the assumption of an affirmative responsibility to undertake the very projects which carry with them such disruptive potential.
Turning particularly to the question of sidewalk maintenance, it is doubtless true that a concerted municipal effort to repair, reconstruct or maintain a sidewalk running through a State-owned right-of-way carries CT Page 7672 with it the potential to disrupt either the flow of vehicular traffic on the adjacent highway or the efforts of State officials to repair and maintain that highway. Where, for example, a sidewalk repair project involves substantial excavation on the margins of a State highway, possible adverse effects on the flow of vehicular traffic may include the slowing of traffic because of the ingress or egress of heavy equipment, the obstruction of motorists' lines of sight up the highway because of the location of such equipment, and/or the fouling of the road surface with building materials, water and dirt. Logically, though the State may have no inherent interest in the sidewalk repair project itself, it is vitally interested in ensuring that the completion of that project will not compromise the safety of passing motorists. Thus the State's retention of the power to require encroachment permits for work done within its rights-of-way along public highways is properly to be understood as incidental to its fundamental responsibility to take care of the highways themselves, not as an independent assertion of control over all land adjacent thereto and all improvements, including sidewalks, thereon.
For similar reasons, the State's assumption of the responsibility for the pruning or removal of trees up and across the street from where the plaintiff claims to have fallen cannot fairly be viewed as evidence that the State has assumed control over all property within its right-of-way. Instead, the State's trimming or removing trees within its right-of-way must also be viewed as limited effort to ensure the safety of the motoring public. If and to the extent that the growth of trees within the right-of-way threatens the safety of motorists by obstructing their view of the roadway, creating the risk of falling branches or the like, the commissioner is naturally and necessarily concerned with and responsible for their removal. The exercise of such limited responsibility, however, is merely incidental to the commissioner's broader responsibility for public safety on the highways, not an assumption of plenary control over all trees or other objects, including sidewalks, within the margins of the State highway system.
For all of the foregoing reasons, the record here presented is devoid of any evidence suggesting that the State assumed control over the portion of sidewalk on which CT Page 7673 plaintiff MacArthur fell. To the contrary, the Town of Suffield has expressly admitted that it alone has such control, and its admission is entirely consistent with the settled law of our State.
In conclusion, the Court must grant the defendant State of Connecticut's Motion for Summary Judgment, because there is no genuine issue of material fact as to its lack of any duty to keep the sidewalk in question in repair.
Michael R. Sheldon Judge