[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR A DECLARATORY JUDGMENT
The plaintiff insurer seeks a declaration as to its obligations under a homeowner's policy issued to the defendants Frederick and Patricia Carpentino. These defendants are being sued in another case because of the acts of their daughter, the defendant Kelly Carpentino. Though that suit sounds in negligence, this plaintiff argues that it is not obligated to indemnify nor defend its insured, the Carpentinos, because the underlying acts were intentional and intentional conduct is excluded from coverage.
The defendants stress that Connecticut recognizes a cause of action for "negligent assault" and argues that the episode in question here constitutes just that. Kelly Carpentino denies any CT Page 450-A intent to strike or injure the victim. In connection with this assertion, the defendants rely on American Insurance Co. v.Saulnier, 242 F. Sup. 257 (D. Conn. 1965). In that case, the court appears to have been influenced by the protestations of a minor child to the effect that he did not intend to injure anyone when he threw a bottle into a swimming pool with several children in the area.
The plaintiff refers on the exclusionary language of the policy for acts and results "intended or expected" and cites numerous cases for the proposition that an objective test must be applied, as a subjective test would be useless — every insured being able to deny any intent. (Citations omitted).
Most courts interpret the "intended or expected" language under the common law test in tort cases — i.e., one intends or expects the natural and probable consequences of his acts. (Citations omitted).
Both parties cite Suarez v. Dickmont Plastics Corp.,229 Conn. 99 (1994). This language from pages 108 and 109 state the Connecticut view:
 In defining the operative terms, we stated in Mingachos v. CBS. Inc., supra, 196 Conn. 101, that "intent refers to the CT Page 450-B consequences of an act . . . [and] denotes[s] that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to follow from it. 1 Restatement (Second), Torts § 8A (1965)." (Citation omitted; internal quotation marks omitted.) "A result is intended if the act is done for the purpose of accomplishing such a result or with knowledge that to a substantial certainty such a result will ensue." 1 F. Harper 
F. James, Torts (1956) § 3.3, p. 216. An intended or wilful injury "does not necessarily involve the ill will or malevolence shown in express malice," but it is insufficient "to constitute such an [intended] injury that the act . . . was the voluntary action of the person involved." Mingachos v. CBS. Inc., supra, 102. Both the action producing the injury and the resulting injury must be intentional. Rogers v. Doody, 119 Conn. 532, 534, 178 A. 51 (1935). "[Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. Sharkey v. Skilton, 83 Conn. 503, 507-508, 77 A. 950 (1910). The intentional injury aspect may be satisfied if the resultant bodily harm was the direct and natural consequence of the intended act. Alteiri v. Colasso, 168 Conn. 329, 334, 362 A.2d 798 (1975). Markey v. Santangelo, 195 Conn. 76, 77-78, 485 A.2d 1305 (1985)." (Internal quotation marks omitted.) Mingachos v. CBS. Inc.,
CT Page 450-C supra, 102. The known danger involved must go from being "a foreseeable risk which a reasonable man would avoid and become a substantial certainty." W. Prosser, Torts (4th Ed. 1971) § 8, p. 32.
It necessarily follows that the court must examine the occurrence in question and the particular actions of the tortfeasor. In this case, the parties have stipulated and agreed that statements and deposition excerpts attached to the briefs may be utilized to provide the court with the factual context on which to base a decision.
From a review of this material, these observations are relevant. The alleged victim was at all times up to the time she was struck seated in a motor vehicle described alternately as a "truck" or a "jeep. " She occupied the passenger seat and the window as at least partially open. There are contradictions in the versions of the event Kelly Carpentino recited.
In her written statement she said she "slammed the door shut with my left hand and my right knee and then with my right hand I just `swung at' (not legible, could be `slugged at') the girl in the jeep. "
In her July 13, 1994 deposition she was asked if she CT Page 450-D "recalled the door opening at all" and responded "Not until everything was over with." She went on to say she was only trying to protect herself and put her hand through the window to distract the occupant — but she wasn't trying to touch her. She then said she intended to "put her hand up and then stop at a certain point." That point was "before hitting her."
In another deposition (date unclear) at page 15, she told of being threatened by the eventual victim who "reached down, the door opened and I closed the door . . . ." And, again on July 13, "I didn't know if she was going to open the door or to grab for a weapon or something and one thing led to another and my hand went up and that was it."
As a result of this contact, the victim received a broken nose and had a small cut on the bridge of her nose. This latter item is puzzling in view of counsel's argument and demonstration to the effect that the victim was struck with the back of the palm of Miss Carpentino's right hand, demonstrating the "heel" of the hand.
The court concludes that the action of the defendant Kelly Carpentino was intentional and that action resulted in the injuries to the victim. Those injuries are certainly expected and are the natural result of her having thrust her right hand CT Page 450-E through the open window into the passenger area to strike the victim.
Judgment may enter for the plaintiff and a declaration may enter that the actions complained of were intentional and therefore excluded from coverage of the policy issued by the plaintiff.
Anthony V. DeMayo Judge Trial Referee