[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On December 2, 1991, plaintiff, Union Trust Company ("UTC"), commenced this foreclosure action against numerous defendants, including Hamilton Branford Limited Partnership ("HBLP"). UTC seeks to foreclose on a mortgage loan made to HBLP on July 1, 1980, and it alleges that HBLP has been in default on the note since July 1, 1991.
On April 3, 1992, UTC filed a motion to substitute Union Trust Company, Trustee, as party plaintiff. UTC maintained that it had been improperly named as plaintiff, despite its status as the holder of certain bonds upon which this foreclosure action is based. UTC argued that Union Trust Company, Trustee, was the proper plaintiff because it was the trustee of the subject bonds. (Defendant's Memorandum in Opposition, dated 5/13/92) HBLP objected to UTC's motion on the ground that UTC was the proper plaintiff because it was the holder of the subject bonds. However, in ruling on UTC's motion to substitute, the court, Celotto, J., ordered that UTC add Union Trust Company, Trustee, as an additional party plaintiff to the action and that UTC file an amended complaint. (Defendant's Memorandum in Opposition to Plaintiff's Motion to Strike, dated 2/18/93, Exhibit A; CT Page 7820 Transcript, p. 5) Plaintiff's amended complaint, dated June 5, 1992, alleges, in part, that "Plaintiff Union Trust Company brings this foreclosure action in its capacity as trustee (Union Trust Company, Trustee) of a mortgage assigned to it by the Connecticut Development Authority via an indenture of trust." (Emphasis added.) (Amended Complaint, dated June 5, 1992, para. 2) The amended complaint alleges the following facts.
Pursuant to a loan agreement dated July 1, 1980, the Connecticut Development Authority ("CDA") agreed to extend a $2,500,000 loan to HBLP. (Amended Complaint, para. 17) The loan was to be funded by CDA's issuance of bonds in that amount, and, in exchange for the loan, and in accordance with a promissory note dated July 31, 1980 ("1980 loan"), HBLP promised to pay CDA the principal sum, together with interest and other charges. (Amended Complaint, paras. 17, 18, 19) To secure the note, HBLP mortgaged certain parcels of land to CDA, and it also entered into a security agreement which gave CDA first security interest in certain machinery and equipment. (Amended Complaint, paras. 20, 21)
Subsequently, CDA conveyed the bonds to UTC, causing UTC to become the holder of the bonds. (Amended Complaint, para. 22) Pursuant to an indenture of trust, CDA assigned the loan agreement, mortgage, security agreement and promissory note to Union Trust Company, Trustee, causing Union Trust Company, Trustee, to become the trustee of those instruments. (Amended Complaint, para. 23)
Plaintiff allege that payment is due under the note, and that the mortgage is in default as HBLP has failed to make the required payments since July 1, 1991. The amended complaint further alleges that plaintiff, Union Trust Company, Trustee, still owns the note, mortgage, security agreement and loan agreement. (Amended Complaint, paras. 24, 27)
HBLP filed an answer, six special defenses and a five-count counterclaim on July 2, 1992. In a section which precedes HBLP's counterclaim, entitled "Background Facts," HBLP states that it borrowed $2,500,000 from CDA in July of 1980, and that it secured the loan by executing a mortgage and by providing a security interest in the land, the buildings, and in the installed machinery and equipment. (Background Facts, paras. 2, 4, 7)[1]
HBLP then leased "two buildings on approximately thirteen acres of land," machinery and equipment to Sero of New Haven, Inc. CT Page 7821 ("Sero NH"), and Sero N.H. guaranteed payment of all monies due under the CDA bond, note and mortgage. (Background Facts, paras. 9, 14) On October 12, 1983, the assets of Sero N.H. were acquired by a company known as the Sero Company ("Sero NJ"), a New Jersey limited partnership. (Background Facts, para. 15) A consortium, consisting of UTC, Manufacturers Hanover Trust, and Manufacturers Hanover Bank Delaware, funded the acquisition of Sero N.H. by Sero N.J. ("1983 loan"). (Background Facts, paras. 22, 23) UTC released Sero N.H. as a guarantor, and it entered into a new guaranty agreement with Sero NJ. (Background Facts, para. 18) HBLP states that, following the 1983 financing, the consortium became increasingly involved in Sero's business operations, and, as a result of the consortium's interference and mismanagement, Sero N.J. was forced into bankruptcy. (Background Facts, paras. 25-30) HBLP contends that "the destruction of Sero N.J. meant that the source of the funding for the repayment of the bonds and the Note on which the foreclosure of the Mortgage is founded was destroyed. (Background Facts, para. 25)
The first special defense asserts that UTC is barred from enforcing the terms of the note because it breached its fiduciary obligation to HBLP, and the second special defense maintains that UTC is barred from foreclosure, and estopped from asserting a default, because it brought about the default through "its own actions and the actions of its co-conspirator and fellow lenders." The third and fourth special defenses allege that, due to its inequitable conduct, UTC is equitably estopped from enforcing the terms of the note, mortgage, and other documents, and that UTC's mortgages should be subordinated to HBLP's interests. The fifth special defense claims that UTC is barred from seeking equitable relief under the unclean hands doctrine. The final special defense, which plaintiff does not move to strike, states that "plaintiff is barred from seeking a deficiency judgment against defendant Hamilton Branford Limited Partnership" pursuant to the express terms of the July 31, 1980 promissory note.
In a section entitled "Allegations Common to All Counts," HBLP states that the counterclaim arises out of the financial dealings of UTC, "who acting together with, conspiring with, and aiding and abetting with, Manufacturers Hanover Trust Company . . . caused, permitted, participated in, allowed, and brought about the destruction and loss of" HBLP's security for the payment of the mortgage note and deed upon which the foreclosure is based. HBLP argues that, but for the conduct of UTC and its banking CT Page 7822 associates, no default would have occurred, "and if one had occurred, there would have been more than adequate security available to cover the debt." (Defendant's Answer, Special Defenses and Counterclaim, pp. 7-8)
Count one alleges that UTC breached its fiduciary obligations to HBLP in various ways. Count two asserts that UTC breached an implied covenant of good faith, and count three alleges a breach of a duty of fair disclosure. In its fourth count, HBLP alleges a violation of the Connecticut Unfair Trade Practices Act, and count five sets forth a conspiracy claim.
On January 6, 1993, UTC filed a motion to strike HBLP's first five special defenses and the entire counterclaim.[2]
Defendant filed a memorandum in opposition, and plaintiff filed a reply memorandum. On May 26, 1993, the court, Celotto, J., granted UTC's motion to strike without a memorandum of decision, and HBLP filed a motion for articulation on June 4, 1993.
The motion to strike tests the legal sufficiency of a pleading. Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432
(1989); Practice Book 152. When ruling on a motion to strike, the court is restricted to the alleged facts, and it must construe these facts in the light most favorable to the nonmovant. Rowe v. Godou, 209 Conn. 273, 278, 550 A.2d 1073
(1988). If the facts provable under the pleadings would support a defense or a cause of action, the motion to strike must fail. Mingachos v. CBS, 196 Conn. 91, 109, 491 A.2d 368 (1985).
UTC moves to strike HBLP's first five special defenses and counterclaim on five grounds.[3] Initially, UTC maintains that the first five special defenses and the counterclaim do not arise out of the transaction that was the subject of the complaint. UTC contends that the first five special defenses allege improper activity on the part of UTC in connection with the 1983 loan, but that neither Union Trust Company, Trustee, nor HBLP, were parties to that transaction. UTC states that the present complaint is brought by Union Trust Company, Trustee, whose claim arises under a separate loan made to HBLP in 1980. UTC contends that HBLP had failed to allege any defense to the complaint because it made no allegations of improper conduct by Union Trust Company, Trustee, nor any allegations of misconduct concerning the 1980 loan. (Plaintiff's Motion to Strike, dated 1/5/93)
In relevant part, HBLP counters that the special defenses CT Page 7823 and counterclaim arise out of the same transaction as the foreclosure, and that UTC's acquisition of the CDA bonds terminated the trust and its status as trustee.
"[A] counterclaim is a cause of action existing in favor of the defendant against the plaintiff and on which the defendant might hve [have] secured affirmative relief had he sued the plaintiff in a separate action. (Citation omitted) Wallingford v. Glen Valley Associates, Inc., 190 Conn. 158, 160, 459 A.2d 525 (1983). However, "Practice Book 116 provides that a counterclaim must arise out of the transaction which is the subject of the plaintiff's complaint." Id., 160. Practice Book 116 "is a rule designed to permit the joinder of closely related claims where such joinder is in the best interests of judicial economy." Id., 161. The underlying purposes of 116 are "judicial economy, avoidance of multiplicity of litigation, and avoidance of piecemeal disposition of what is essentially one action. . . ." (Citation omitted) Id. "In determining whether claims made in a complaint and counterclaim are essentially `one action,' a court must consider whether a substantial duplication of effort would result if each claim was tried separately." Bristol Savings Bank v. Miller's Chevrolet, Superior court, Judicial District of Hartford-New Britain at Hartford, Docket No. 514407 (October 19, 1992), citing Wallingford v. Glen Valley Associates, Inc., supra, 161.
Available defenses in foreclosure actions are "limited to payment, discharge, release, satisfaction or invalidity of a lien." The Glastonbury Bank and Trust Company v. Corbett Construction Co., Inc., 7 CSCR 1320, 1321 (October 15, 1992, Walsh, J.), citing to Petterson v. Weinstock, 106 Conn. 436, 441,138 A.2d 433 (1927); Connecticut Savings Bank v. Reilly,12 Conn. Sup. 327-28 (Super.Ct. 1944); see also, Shoreline Bank Trust v. Leninski, Superior Court, Judicial District of New Haven (March 19, 1993, Celotto, J.). "The equitable defenses of mistake, accident, or fraud from fulfilling a condition of the mortgage can also be used to prevent foreclosure." The Glastonbury Bank and Trust Company v. Corbett Construction Co., supra, 1321, citing to Petterson v. Weinstock, supra, 442. "Courts have not been receptive to foreclosure defendants and counterclaims based on factors outside of the note or mortgage." (Citations omitted) Shoreline Bank Trust v. Leninski, supra.
As discussed previously, HBLP asserts that UTC is barred from enforcing the terms of the note due to UTC's breach of CT Page 7824 fiduciary obligations (first special defense); that UTC is barred from foreclosure and estopped from asserting a default because it brought about the default (second special defense); UTC is equitably estopped from enforcing the terms of the note, mortgage and other documents due to its "inequitable conduct" (third and fourth special defenses); and that UTC is barred from seeking equitable relief under the doctrine of unclean hands (fifth special defense).
Therefore, HBLP has not asserted any of the recognized defenses available to a foreclosure defendant, nor does HBLP assert that the "inequitable conduct" arises out of the making or the validity of the 1980 transaction, which is the transaction underlying plaintiff's complaint. Accordingly, the court grants plaintiff's motion to strike HBLP's first five special defenses.
HBLP's counterclaim against UTC alleges a breach of fiduciary obligations (first count); a breach of implied covenant of good faith (second count); breach of duty of fair disclosure (third count); violation of the Connecticut Unfair Trade Practices Act (fourth count); and conspiracy (fifth count).
Plaintiff's action arises out of the 1980 loan agreement, and HBLP does not attack the validity of that transaction. Rather, HBLP's counterclaim alleges improper activity on the part of UTC in connection with the 1983 transaction, an entirely separate agreement to which HBLP was not even a party. Accordingly, the court grants plaintiff's motion to strike HBLP's counterclaim as it does not arise out of the transaction which is the subject of plaintiff's complaint.
The court grants plaintiff's motion to strike defendant's first five special defenses and defendant's counterclaim.
UTC moved to strike HBLP's first five special defenses and counterclaim on five grounds. The first ground advanced by UTC was that HBLP's special defenses and counterclaim did "not arise out of the transaction which is the subject of plaintiff's complaint." Inasmuch as the motion to strike is granted on that basis, the court does not address the remaining grounds.
Donald W. Celotto, Judge