ALFRED WENDLAND *v.* RIDGEFIELD CONSTRUCTION SERVICES, INC.

BOGDANSKI, PETERS, ARMENTANO, WRIGHT and DALY, Js.

Argued January 9—decision released May 12, 1981

*James J. Maher,* with whom, on the brief, was *Thomas C. Thornberry,* for the appellant (defendant).

*L. Douglas Shrader,* with whom was *Joseph C. Gasparrini,* for the appellee (plaintiff).

WRIGHT, J.  This personal injury action arises from a construction site accident which occurred on October 30, 1973, at the Brookfield High School in the town of Brookfield.  The plaintiff, Alfred Wendland, sustained compound fractures of the tibia and fibula of his right leg, and a fracture dislocation of his left ankle when an earthen wall in a trench, near which he was working, collapsed and the ensuing landslide pinned him against wooden panel forms.

Wendland was employed as a carpenter by Ray Adler, Inc., general contractors for the Brookfield High School construction project.  Ray Adler, Inc., had in turn subcontracted the excavation work for the project to the defendant Ridgefield Construction Services, Inc.

At the time of this accident the plaintiff was working at the bottom of a narrow trench formed by a vertical excavated wall and the panel forms which he and a coworker were putting in place.  The vertical wall of excavated earth resulted from the defendant's cutting into a hillside with excavating equipment.  Opposite this vertical excavated wall

concrete footings had been poured. Wendland and his coworker were in the process of erecting atop these footings panel forms used in the pouring of concrete to form foundation walls of the building under construction. These panels, when erected, formed the opposite wall of a deep, narrow trench.

No support mechanisms of any kind had been utilized by the defendant to stabilize the vertical earthen wall. The defendant failed to cut back the wall in the area in which the plaintiff was working and that wall remained vertical rather than graded back to an angle at which the sandy soil would remain in repose. Heavy rains suspended work on the project the day before the accident. The next day, while the plaintiff was working in the trench area, the vertical earthen wall gave way, causing the plaintiff's injuries. The plaintiff obtained a judgment for $291,150. The defendant has appealed.

On appeal the defendant claims that the court erred in instructing the jury that if the defendant failed to satisfy an Occupational Safety and Health Regulation they must find the defendant to have been negligent per se. The defendant also seeks a reversal on the basis of the plaintiff's own negligence and the excessive size of the verdict.

## I

With respect to the jury instructions, the defendant argues essentially that the Occupational Safety and Health Regulations[1] do not apply to the present

[1] The Connecticut Occupational Safety and Health Act became effective May 30, 1973. Public Acts 1973, No. 73-379. Section 6(a) of that act, now set out as General Statutes § 31-372 (a), provided for the adoption of federal standards recognized by the United States Secretary of Labor under the authority of the Occu-

case because the plaintiff was not employed by the defendant. The defendant does not dispute the fact that it failed to meet the standards pertaining to excavations, but rather it contends that no "violation" of OSHA regulations occurred because no employer-employee relationship existed between the plaintiff and the defendant. Support for this position is found in the general duty clause which requires that "[e]ach employer shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." General Statutes § 31-370 (a). See Morey, "The General Duty Clause of the Occupational Safety and Health Act of 1970," 86 Harv. L. Rev. 988 (1973).

The question of which employers should suffer the liability for OSHA violations occurring on a multi-employer worksite has caused substantial controversy. See *Brennan* v. *Occupational Safety & Health Review Commission & Underhill Construction Corporation*, 513 F.2d 1032, 1037–38 (2d Cir. 1975); *Brennan* v. *Gilles & Cotting, Inc.*, 504 F.2d 1255, 1260 (4th Cir. 1974); note, "Who is an Employer for Purposes of OSHA," 27 A.L.R. Fed. 943; comment, 62 Geo. L. J. 1483 (1974). Rather

pational Safety and Health Act of 1970, 29 U.S.C. §§ 651-678 (OSHA). At the time the plaintiff was injured, identical standards were in effect at the state and federal level. The federal standards, however, preempted state standards until January, 1975, when by agreement between the state and federal regulatory authorities, the federal government withdrew its regulations from Connecticut, leaving the state agency with the sole enforcement power under the state OSHA. Subsequently, the state OSHA was limited so that it applied only to state and local governments. Public Acts 1977, No. 77-610, § 1, effective July 1, 1978, now set out as General Statutes § 31-367 (d). The state statutes and regulations that pertain to this case substantially mirror their federal counterparts.

than limiting an employer's duty to comply with safety regulations solely to those situations where that employer's employees are exposed to the hazard, as urged by the defendant, we follow the approach taken by the Court of Appeals for the Second Circuit in the *Brennan* case. Thus, where an employer is in control of an area and responsible for its maintenance, as was the case here, a violation occurs if any employees working on the project have access to the hazard. *Brennan* v. *Underhill,* supra. See General Statutes § 31-370 (c); *Beatty Equipment Leasing* v. *Secretary of Labor,* 577 F.2d 534, 536–37 (9th Cir. 1978). Thus in the present case, the defendant was responsible for complying with applicable excavation regulations.[2] The defendant violated the applicable safety regulations when it failed either to shore up or to cut back to an angle of repose the excavated earthen wall which eventually caved in on the plaintiff.

## II

We proceed, then, to determine whether the plaintiff, having established a violation of a regulation, was entitled to a jury instruction on negligence per se. Neither party has briefed this issue.[3] Nevertheless, we must address it because to ignore it would be to ignore a clear, plain statutory directive. General Statutes § 31-369 (b) provides that "[n]othing in this chapter shall be construed to supersede or in any manner affect any workers' compensation law or to enlarge, diminish or affect in any manner common law or statutory rights,

---

[2] Conn. Regs. § 31-372-107-1926 adopts 29 C.F.R. §§ 1926.651—1926.653, which provides the applicable excavation standards.

[3] Upon a motion for reargument, this court invited supplemental briefs on this issue. Nothing contained therein persuades us that our conclusion on this issue was in error.

duties, or liabilities of employers or employees, under any law with respect to injuries, diseases or death of employees arising out of and in the course of employment." Federal law contains a similar provision. 29 U.S.C. § 653 (b) (4).[4] Both statutes refer to the Occupational Safety and Health Act, which is the enabling legislation for the safety regulations at issue in this case. Thus we must decide whether the negligence per se instruction given to the jury in this case is legally correct when measured against these limiting statutes.

Negligence per se operates to engraft a particular legislative standard onto the general standard of care imposed by traditional tort law principles, i.e., that standard of care to which an ordinarily prudent person would conform his conduct. To establish negligence, the jury in a negligence per se case need not decide whether the defendant acted as an ordinarily prudent person would have acted under the circumstances. They merely decide whether the relevant statute or regulation has been violated. If it has, the defendant was negligent as a matter of law. See Prosser, Law of Torts § 36.

A negligence per se instruction transforms the character of the factfinder's inquiry. The applicable standard of care is affected by such an instruction. Because the standard of care is the key factor in determining liability, we conclude that the application of a negligence per se instruction affects com-

---

[4] 29 U.S.C. § 653 (b) (4) provides: "Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment."

mon law rights, duties and liabilities of employers and employees with respect to injuries of employees arising out of and in the course of employment as those terms are used in 29 U.S.C. § 653 (b) (4) and General Statutes § 31-369 (b). Thus, the negligence per se instruction was erroneous.

Our conclusion is supported by the law in other jurisdictions. Applying Mississippi law, a federal district court has declined to buttress OSHA by employing negligence per se. *Otto* v. *Specialties, Inc.*, 386 F. Sup. 1240, 1245 (N.D. Miss. 1974). Louisiana state courts have reached the same result. *Parker* v. *South Louisiana Contractors, Inc.*, 370 So. 2d 1310, 1313 (La. App.), cert. denied, 374 So. 2d 662 (La. 1979). Federal admiralty cases have also interpreted 29 U.S.C. 653 (b) (4) as precluding negligence per se instructions based on an OSHA violation. *National Marine Service, Inc.* v. *Gulf Oil Co.*, 433 F. Sup. 913, 919–20 (E.D. La. 1977), aff'd, 608 F.2d 522 (5th Cir. 1979); *Clary* v. *Ocean Drilling & Exploration Co.*, 429 F. Sup. 905, 907–908 (W.D. La. 1977), aff'd, 609 F.2d 1120 (5th Cir. 1980).

While it is true that some courts have held that OSHA violations constitute negligence per se, we do not find these decisions persuasive because these opinions have not confronted a statute analogous to 29 U.S.C. § 653 (b) (4) or § 31-369 (b). In *Koll* v. *Manatt's Transportation Co.*, 253 N.W.2d 265, 270 (Iowa 1977), the court ruled that a violation of an OSHA regulation by an employer is negligence per se as to his employee.[5] In its opinion,

[5] As discussed in part I, supra, rather than focus solely on the employer-employee relationship, we would determine whether, under the factual circumstances of the case and the applicable statutes and

however, the court did not discuss the effect of Iowa Code Ann. § 88.20, which is similar to 29 U.S.C. § 653 (b) (4). The Supreme Court of the state of Washington has also accorded negligence per se status to OSHA violations. *Kelley* v. *Howard S. Wright Construction Co.,* 90 Wash. 2d 323, 336, 582 P.2d 500 (1978). *Kelley,* which interpreted federal OSHA regulations, also fails to take into account 29 U.S.C. § 653 (b) (4). The same court has accorded negligence per se status to the violation of state administrative industrial safety regulations; *Bayne* v. *Todd Shipyards Corporation,* 88 Wash. 2d 917, 919–20, 568 P.2d 771 (1977); but it did so in light of a clear legislative directive. See Rev. Wash. Code Ann. § 49.16.030.[6] In concluding that state OSHA violations can support a finding of negligence per se, Delaware courts have expressly relied on the absence of a limiting state statute analogous to 29 U.S.C. § 653 (b) (4) or General Statutes § 31-369 (b). *Carroll* v. *Getty Oil Co.,* 498 F. Sup. 409, 413 (D. Del. 1980) (applying state law); *Rabar* v. *E. I. duPont de Nemours & Co.,* 415 A.2d 499, 502–505 (Del. Super. 1980).

In the federal admiralty realm, at least one court had approved a negligence per se instruction for the violation of a safety regulation. *Arthur* v. *Flota Mercante Gran Centro Americano, S. A.,* 487 F.2d 561, 564 (5th Cir. 1974). That decision, however, concerned regulations adopted prior to the enact-

regulations, a violation has occurred. This approach embraces the "general duty" of an employer to his employee as well as other particular duties imposed by the regulatory scheme on persons other than a plaintiff's employer.

[6] This statute has been replaced by the Washington Industrial Safety and Health Act; Rev. Wash. Code Ann. §§ 49.17.010—49.17.910; which does not contain an analog to our General Statutes § 31-369 (b).

ment of OSHA. Id., 562–63. More recently, the *Arthur* holding has been severely questioned in light of maritime law which has developed since OSHA was enacted. See, e.g., *Chavis* v. *Finnlines LTD, O/Y,* 576 F.2d 1072, 1082 (4th Cir. 1978); *Clary* v. *Ocean Drilling & Exploration Co.,* 429 F. Sup. 905, 907–908 (W.D. La. 1977), aff'd, 609 F.2d 1120 (5th Cir. 1980).

Our holding that regulations promulgated under OSHA cannot furnish a basis for a jury instruction on negligence per se does not preclude the admission of these regulations, if applicable, as *evidence* of the standard of care. Similar regulations are admissible in several other jurisdictions. See *Knight* v. *Burns, Kirkley & Williams Construction Co.,* 331 So. 2d 651, 654 (Ala. 1976); *Disabatino Brothers, Inc.* v. *Baio,* 366 A.2d 508, 511 (Del. 1976); *National Marine Service, Inc.* v. *Gulf Oil Co.,* 433 F. Sup. 913, 919–20 (E.D. La. 1977), aff'd, 608 F.2d 522 (5th Cir. 1979); *Dunn* v. *Brimer,* 259 Ark. 855, 856–57, 537 S.W.2d 164 (Ark. 1976); *Buhler* v. *Marriott Hotels, Inc.,* 390 F. Sup. 999, 1000 (E.D. La. 1974). But see *Otto* v. *Specialties, Inc.,* 386 F. Sup. 1240, 1245 (N.D. Miss. 1974) (applying Mississippi law); *Taira* v. *Oahu Sugar Co., Ltd.,* 616 P.2d 1026, 1030 (Hawaii App. 1980). Where an OSHA regulation applies in a civil case, it can provide helpful guidance to the jury in its deliberations. In the present case, however, a new trial is required because the charge incorrectly included a negligence per se instruction. See, e.g., *Coughlin* v. *Peters,* 153 Conn. 99, 103, 214 A.2d 127 (1965).

There is error, the judgment is set aside and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.