[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE DEFENDANTS' MOTION TO STRIKE
The facts alleged in the plaintiff's fifth amended revised complaint, filed on September 16, 1993, are as follows. From August 29, 1986, to September 18, 1990, plaintiff was an at will employee of the defendant Sikorsky Aircraft as an instructor of aircraft maintenance. On or about September 12, 1990, the plaintiff was informed by his supervisor, defendant Osborn, that the plaintiff would be required to travel to Bahrain in order to implement the repair and maintenance program of a Sikorsky helicopter. On September 13, 1990, the plaintiff was provided with a travel advisory from the U.S. State Department.[1] On September 17, 1990, the plaintiff met with the defendant Osborn to discuss both the travel advisory and increased terrorist activities in the proposed area of travel. On September 18, 1994, the plaintiff informed the defendant Osborn, via written memo, that due to the threat of imminent danger, and risk to his personal safety, health, and welfare, he refused to travel to Bahrain. Sikorsky immediately terminated the plaintiff's employment.
In count one, the plaintiff alleges that such termination was CT Page 3659 wrongful as it was demonstrably improper and in violation of the public policy which requires an employer to exercise reasonable care to provide employees with a reasonably safe work place.[2]
Plaintiff alleges that he suffered damages in the form of lost wages, lost benefits and other financial loses, including costs associated with mitigating damages.
In count two, the plaintiff alleges that the conduct of Sikorsky constituted extreme and outrageous conduct, that such conduct intentionally and recklessly caused the plaintiff severe emotional distress, and that as a result of the wrongful termination the plaintiff suffered nervous disorder, sleeplessness and profound episodes of anxiety. In count three, the plaintiff alleges that Sikorsky's conduct resulted in the "unintentional" infliction of emotional distress upon the plaintiff, in that Sikorsky should have realized that terminating the plaintiff's employment two hours after he had expressed his desire not to go to Bahrain, and immediately removing the plaintiff from the building under security escort, involved an unreasonable risk of causing emotional distress. The plaintiff alleges that as a result of the defendant Sikorsky's conduct, he suffered nervous disorder, sleeplessness and profound periods of anxiety.
On October 1, 1993, Sikorsky filed a motion to strike all three counts of the complaint, on behalf of itself and defendant Osborn, together with a memorandum of law. On February 3, 1994, the plaintiff filed an objection to the motion to strike with a memorandum of law in support.
A motion to strike is the vehicle to "challenge the legal sufficiency of pleadings." Mingachos v. CBS, Inc., 196 Conn. 91,108, 491 A.2d 368 (1985). A motion to strike admits all well pleaded facts. Id. In deciding upon a motion to strike, the court should construe the challenged allegations in the light most favorable to sustaining the legal sufficiency of the complaint. Bouchard v. People's Bank, 219 Conn. 465, 471, 594 A.2d 1 (1991). If the facts provable under the allegations of the complaint would support a cause of action, then the motion must fail. Alarm Applications co. v. Simsbury Volunteer Fire Co., 179 Conn. 541,545, 427 A.2d 822 (1980).
A. Motion to Strike Count I: Wrongful Termination
Sikorsky moves to strike the first count of the complaint on the ground that the plaintiff fails to plead a clear mandate of CT Page 3660 public policy. Additionally, Sikorsky contends that to the extent that such a public policy exists, it applies only in the State of Connecticut. Furthermore, Sikorsky argues that the plaintiff has failed to exhaust the administrative remedies provided by the statutory schemes upon which plaintiff relies for his claim that an important public policy exists for employers to provide a reasonably safe work place.
In opposition, the plaintiff argues that the General Statutes are replete with enacted legislation which supports his claim that there exists a public policy that employers provide their employees with a safe work place. The plaintiff's complaint and memorandum in opposition point to the following as foundation for the existence of such a public policy: General Statutes 31-23 to31-49, entitled Labor Regulation; General Statutes 31-367 et seq., the Occupational Safety and Health Act; General Statutes 29-291
et. seq., entitled Fire Marshals and Fire Hazards. Fire Safety Code; and General Statutes 29-381 et seq., Safety of Public and Other Buildings.
In general, at will employment contracts are terminable at will. Coelho v. Posi-Seal International, 208 Conn. 106, 118,544 A.2d 170 (1980). Connecticut, however, has recognized "a narrow public policy exception to the general rules governing the termination of an at will employment relationship." Carbone v. Atlantic Richfield Co., 204 Conn. 460, 467, 528 A.2d 1137 (1987). "[A] common law cause of action in tort for the discharge of an at will employee [exists]" if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy.'" (Emphasis in original.) Id., 466-67, quoting Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 475, 427 A.2d 385
(1980).
 This public policy exception to the employment at will rule carved out in [Sheets v. Teddy's Frosted Foods, Inc., supra,] attempts to balance the competing interests of employer and employee. Under the exception, the employee has the burden of pleading and proving that his dismissal occurred for a reason violating public policy. The employer is allowed, in ordinary circumstance, to make personnel decisions without fear of incurring civil liability. Employee job security, however, is protected against employer actions that contravene public policy.
CT Page 3661
Morris v. Hartford Courant Co., 200 Conn. 676, 679, 513 A.2d 66
(1986).
 The issue then becomes the familiar common law problem of deciding where and how to draw the line between claims that genuinely involve the mandates of public policy and are actionable, and ordinary disputes between employee and employer that are not. We are mindful that courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation. We are, however, equally mindful that the myriad of employees without the bargaining power to command employment contracts for a definite term are entitled to a modicum of judicial protection when their conduct as good citizens is punished by their employers.
Sheets v. Teddy's Frosted Foods, Inc., supra, 477. "Given the inherent vagueness of the concept of public policy, it is often difficult to define precisely the contours of the exception." Morris v. Hartford Courant Co., supra, 680. "Public policy can be found in express statutory or constitutional provisions, or in judicially conceived notions of public policy." Rafael v. St. Vincent's Medical Center, 9 Conn. L. Rptr. 610, 611 (August 26, 1993, Ballen, J.), citing Morris v. Hartford Courant Co., supra.
General Statutes 31-49 provides in pertinent part:
 It is shall be the duty of the master to exercise reasonable care to provide for his servant a reasonably safe place in which to work, reasonably safe appliances and instrumentalities for his work . . . .
General Statutes 31-370 (a) provides:
 Each employer shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are . . . likely to cause . . . serious physical harm to his employees.
General Statutes 31-40t(b) provides in pertinent part:
 No employer shall discharge, discipline or otherwise penalize any employee because the employee . . . (2) refuses in good faith to expose himself to a hazardous condition in the work place, provided (A) the condition causing the CT Page 3662 employee's apprehension of . . . serious physical harm is of such a nature that a reasonable person, having the knowledge, education, training and experience necessary for the performance of the employee's job, under the circumstances confronting the employee, would conclude that there is a hazardous condition, (B) there is insufficient time due to the urgency of the situation to eliminate or abate the enforcement procedures, (C) the employee notifies the employer of the hazardous condition and asks the employer to correct and abate the hazardous condition and (d) the employer is unable or refuses to correct or abate such condition. No employee shall be discharged, disciplined or otherwise penalized while a hazardous condition continues to exist.
Assuming without deciding that Connecticut recognizes a public policy which requires employers to provide employees with a reasonably safe work place, the plaintiff has not pleaded sufficient facts in count one to demonstrate that he is entitled to protection under this public policy.[3] An examination of the statutes cited to by the plaintiff reveals that "workplace" or "place or employment" is contemplated to mean a physical plant, factory, facility, mill, works, building or establishment, i.e. places with fixed or definable boundaries and location. General Statutes 31-50, the enforcement provision for Section 31-49, provides for the labor commissioner to issue orders to "persons or corporations owning, operating, or managing the factories or buildings inspected." (Emphasis added.) Additionally, the labor commissioner is the enforcement agency for the Occupational Safety and Health Act, General Statutes 31-367 et seq. See General Statutes 31-374 and 31-375. Under the Occupational Safety and Health Act, the labor commissioner is empowered to make inspections and investigations of "any factory, plant, establishment, construction site, or other area, work place or environment" and to inspect "pertinent conditions, structures, machines, apparatus, devices, equipment and the materials therein . . . ." General Statutes31-374 (1) and (2).
The statutes relied upon by the plaintiff contemplate that an owner or employer have possession or control over a definable "workplace" or "place of employment" in order to provide a reasonably safe environment. See Perille v. Raybestos-Manhattan-Europe, Inc., 196 Conn. 529, 494 A.2d 555 (1985) (The court considered application of Section 31-49 to a cause of action alleging assaults perpetrated by one co-worker against another CT Page 3663 which occurred during work hours on the premises of the defendant employer's Stratford facility); Wendland v. Ridgefield Construction Service, Inc., 184 Conn. 173, 439 A.2d 954 (1981) (The court found the defendant employer to be in control of an excavation site and responsible for its maintenance and, therefore, responsible for compliance with applicable excavation regulations).
The plaintiff fails to allege that Sikorsky owned, operated or managed a "workplace" or "place of employment" in Bahrain. Rather, the plaintiff alleges that Sikorsky required him to travel to Bahrain in order to implement a repair and maintenance program to a Bahraini crew. The plaintiff does not allege that the "workplace" or "place of employment" in Bahrain was unreasonably unsafe or suffered from some hazardous condition. The plaintiff alleges that all of Bahrain, as a sovereign and autonomous nation, was unsafe at the time of his proposed work assignment. Expanding the definition of work place or place of employment to include a whole country is beyond the contemplation of the statutes. Pursuant to the foregoing the plaintiff fails to plead sufficient facts to place himself within the protection of the public policy. The motion to strike count one of the complaint is granted.
B. Counts II and III: Intentional and Negligent Infliction of Emotional Distress
Sikorsky alleges in the motion to strike that counts two and three are barred by the exclusivity provisions of the Workers Compensation Act. However, in Fulco v. Norwich Roman Catholic Diocesan Corporation, supra, 807-10, the court recognized that a cause of action for negligent or intentional infliction of emotional distress arising out of employment termination does not fall within the ambit of the exclusivity provisions of the Workers' Compensation Act. The motion to strike counts two and three of the complaint, on the above stated grounds, is denied.
1. Count Two: Intentional Infliction of Emotional Distress
The defendant asserts, in its motion to strike, that the second count of the plaintiff's complaint, alleging intentional infliction of emotional distress, is legally insufficient as the plaintiff fails to allege facts that demonstrate the conduct of the defendant was extreme and outrageous.
The elements of a cause of action for intentional infliction of emotional distress are: 1) the actor intended to inflict CT Page 3664 emotional distress or knew or should have known that emotional distress was a likely result of his or her conduct; 2) the conduct was extreme and outrageous; 3) the actor's conduct was the cause of the plaintiff's distress; and 4) the resulting emotional distress to the plaintiff was severe. DeLaurentis v. New Haven, 220 Conn. 225,266, 267, 597 A.2d 807 (1991). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Id., 267. Whether conduct is extreme or outrageous is for the determination of the court in the first instance. McGrath v. The Yale Corporation, Superior Court, judicial district of New Haven, D.N. 32 61 44 (May 17, 1993, Thompson, J.), citing Kirtner v. Nidec-Torin Corp., 622 F. Sup. 112,114 (D. Conn. 1987); see also Champion v. Lipscomb, 8 CSCR 562
(April 23, 1993, Hammer, J.); Lawrence v. Summit Corporation of America, 8 CSCR 402 (March 22, 1993, Sullivan, J.); Mill's Pride, Inc. v. Somers, 2 Conn. L. Rptr. 385, 388 (September 13, 1990, Spada, J.).
The allegations of the plaintiff's complaint are insufficient to demonstrate extreme and outrageous conduct on the part of Sikorsky. The motion to strike count two of the complaint is accordingly granted.
2. Count Three: Negligent Infliction of Emotional Distress
An action for negligent infliction of emotional distress requires a plaintiff to plead and prove "that the defendant knew or should have known that its conduct involved art unreasonable risk of causing emotional distress, and that the distress, if it were caused, might result in illness or bodily harm." Buckman v. Peoples Express, Inc., 205 Conn. 166, 173, 530 A.2d 596 (1987); Montinieri v. Southern New England Telephone, 175 Conn. 337, 345,398 A.2d 1180 (1978).
The defendant, in the motion to strike, alleges that the plaintiff fails to state a claim for "unintentional" infliction of emotional distress in that he fails to plead that the defendant engaged in extreme and outrageous conduct. Extreme and outrageous conduct is not an element of a cause of action for negligent infliction of emotional distress. The motion to strike count three of the complaint is accordingly denied.
FORD, JUDGE. CT Page 3665