[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO SET ASIDE THE VERDICT, FOR JUDGMENT NOTWITHSTANDING THE VERDICT, MOTION FOR DIRECTED VERDICT
In this lawsuit, Phillips Medical Systems North America, Inc. and North American Phillips Corporation sought indemnity CT Page 9994 from Saint Mary's Hospital for a $750,000.00 judgment paid in connection with a claim made against Phillips by Eleanor Sivilla, who was injured when a piece of x-ray equipment fell down on her head on August 22, 1988, while she was assisting in surgery in St. Mary's operating room. St. Mary's has now moved to set aside and for judgment notwithstanding a $750,000 jury verdict rendered on the counterclaim of the Phillips companies.
When Phillips originally offered to sell to the hospital the equipment which ultimately fell on Mrs. Sivilla, the jury could have found it used a preprinted standard proposal form which included inter alia the following language.
 1. CONTROLLING PROVISIONS. These terms and conditions shall govern the transaction described on the face hereof and shall amend any terms and conditions of Buyer's order to the extent that a conflict exists. In the absence of a written acceptance of these terms and conditions by the Buyer, an acceptance of any products covered by the order shall constitute an acceptance of these terms and conditions. No waiver, alteration or modification of these provisions or any of the terms of the order shall be valid unless made in writing and signed by an officer or other authorized representative of Seller. This order is not assignable by Buyer without Seller's written consent, and any such assignment to a leasing company or other third party shall be subject exclusively to these terms and conditions.
 14. PRODUCT OPERATION. Buyer agrees that all products purchased hereunder shall be operated exclusively by duly qualified personnel in a safe and reasonable manner in accordance with Seller's written instructions and for the purpose for which the products were intended and, further, in compliance with the standards of the National Bureau of Standards and the Department of Health, Education and Welfare, as revised from time to time. Buyer agrees to indemnify and hold Seller harmless from and against all claims, demands, actions, causes of actions, judgments and costs, including reasonable attorney's fees, arising out of or in connection with the operation of the products by the Buyer, unless caused by Seller's negligence. CT Page 9995
From all the facts and circumstances, in referencing the exact proposal number on the preprinted form when the hospital used its own purchase order form to order the x-ray equipment, the jury could have reasonably found that the hospital intended to accept the Phillip's proposal, including the indemnity clause found in Paragraph 14.
Because the court finds that counterclaim defendant St. Mary's claims are without merit, all of its post judgment motions are denied.
The court will now turn to the numerous reasons urged by the counterclaim defendant, St. Mary's, as its reasons to overturn the verdict.
 I.
The hospital's first ground is that the court lacked subject matter jurisdiction for the reason that this action arises from and was brought under the Product Liability Act, § 52-572m et seq., which does not authorize an indemnification claim.
The original action commenced by the plaintiff Eleanor Sivilla was clearly a product liability action brought under provisions of § 52-572m of the statutes. Despite the fact that at the time of St. Mary's intervention, § 52-572n(c) of the General Statutes forbade an employer like St. Mary's to intervene in an employee's product liability suit, St. Mary's intervened anyway. That caused the filing of the counterclaim against St. Mary's which resulted in the verdict on the counterclaim of $750,000. St. Mary's itself recognized that it caused this exposure by its intervention, when it commenced a separate negligence action against its former attorneys who filed its motion to intervene.
The defendant St. Mary's contends that pursuant to § 52-572r(d) of the statutes, St. Mary's was barred from bringing any action for indemnity against any party immune from liability. That statute provided in pertinent part that no "third party" against whom a product liability action was brought could "maintain any action for indemnity against any person immune from liability." However, that statute was repealed effective July 1, 1993 by Public Act 93-228 §§ 34, 35. CT Page 9996
The courts have interpreted § 52-550 of the General Statutes which utilizes similar "No civil action may be maintained . . ." language concerning lawsuits brought for the conveyance of real property, not founded on written contracts. Appellate interpretation of that statute has held that despite that statute of frauds language, doctrines of waiver or estoppel may permit the bringing of such an action. Wolfe v. WallingfordBank Trust, 124 Conn. 507. In Wolfe, the court held that the statute of frauds does not void the contract to which the limitation applies, but affects only the remedy. It then held that equitable waiver and estoppel doctrines may permit the remedy in the face of the words of the statute. The court finds nothing in the legislative history of § 52-572r(d) or in the language of the statute itself which would require any different result than Wolfe adjudged in reviewing similar language. When the legislature wanted to declare written indemnity agreements in the construction industry against public policy and void rather than merely voidable, it knew how to do it. See: Gen. Stat § 52-572k. In that statute it said they were "againstpublic policy and void". That the legislature did not employ such language in § 52-572r(d) is indicative to this court that it did not intend to make voluntary indemnity agreements void. An immunity is a right peculiar to some individual or body; an exemption from some general duty or burden; a personal benefit or favor granted by law contrary to the general rule. Ex parteLevy, 43 Ark. 42, 52 Am Rep 550. A person can waive a statutory requirement, the purpose of which is to confer a private right or benefit. Hatch v. Merigold, 119 Conn. 339.
Furthermore, in the court's opinion, Gen. Stat. § 53-572r(d) is aimed at involuntary common law indemnity, not voluntary contractual indemnity.
That statutory prohibition cannot affect indemnity actions arising out of voluntary express contract as the jury found existed here. St. Mary's Hospital was free to contract to provide Phillips an indemnity and to provide the terms under which it would accept responsibility for indemnity payment of claims, demands or judgments which Phillips might be exposed to as a result of St. Mary's negligence. The jury found that it did so. Therefore, the court in a jury trial had the power to hear and decide Phillips counterclaim. The court will not set aside the verdict based on this claim. CT Page 9997
 II.
St. Mary's next claims that the verdict should be set aside because the court lacked subject matter jurisdiction for the reason that the law of the case was established by the court, Pittman, J., as a case of product liability and the court, Flynn, J., erred by subsequently changing the cause of action to one of contract. Phillips moved for summary judgment against the intervening plaintiff, St. Mary's Hospital, on the intervening plaintiff's intervening complaint which asserted a claim for reimbursement of worker's compensation benefits paid or payable to the primary plaintiffs, Eleanor and Matthew Sivilla, because that claim was precluded by § 52-572r(c) of the Product Liability Act. This matter was heard by Judge Pittman and decided on August 30, 1993. She decided only what was raised by the motion, namely that the intervening complaint was barred by the provisions of § 52-572r(c) of the Products Liability Act which expressly barred suits by employers to recover.[1] The St. Mary's claim seems to be two fold. The first prong is that this court under the law of the case doctrine was bound to follow a decision Judge Pittman made that the counterclaim by Phillips was a product liability action. However, Judge Pittman did not address herself to Phillips counterclaim at all, much less determine as the rule of this case what its legal theory was. She decided only that St. Mary's intervening complaint brought under provisions of the product liability act was barred by it. St. Mary's second claim seems to be that somehow this court allowed "the matter to proceed as a contract claim for indemnification". Both parties recognized that Phillips counterclaim involved a claim of express contract. St. Mary's requested a charge on contract formation and express contract, and cannot now claim error because the court submitted the case to the jury and charged on the very contract theory upon which it filed a charge request.
The verdict will not be set aside based on this claim.
 III.
St. Mary's next contends that the court violated Article 1, Section 1 of the Constitution of the State of Connecticut by conferring an exclusive emolument or privilege from the community on the plaintiff, Eleanor Sivilla, by allowing a double recovery. St. Mary's argues that Article 1, § 1 of the Constitution of Connecticut provides that "All men when they CT Page 9998 form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community." It maintains that the court, by construing this case as one of product liability and then changing it to a contract action, and allowing the indemnification action, has conferred an exclusive emolument or privilege from the community on the plaintiff, Sivilla. As observed earlier regarding a similar argument, Judge Pittman never decided that the counterclaim was a products liability action. Therefore there was no "law of the case on that issue". This court did not "change" the cause of action to a contract action but charged the jury on the basis of the plaintiff's counterclaim complaint which pled an express contract and the request to charge of St. Mary's which requested the court to instruct the jury on contract formation principles. There was evidence before the jury that Mrs. Sivilla's case was settled for $750,000 in "new money" over and above what she had received from worker's compensation. The law in effect at the time of her injury permitted her to collect workers compensation under provisions of Chapter 568 of the General Statutes and to bring a separate product liability lawsuit against the manufacturer of the equipment which struck her pursuant to § 52-527m. Section52-572r(c) of the act prohibited reimbursement of workers compensation benefits to an employer for sums it had paid to an injured worker like Mrs. Sivilla. The counterclaim defendant, St. Mary's, had not shown Mrs. Sivilla received an exclusive emolument or privilege from the community. She received what any other citizen or person similarly situated might have obtained under these applicable laws. Nor has St. Mary's shown any double recovery. Mrs. Sivilla's $750,000 settlement payment was in "new money" which contemplated that she had already received worker's compensation and could not sue her own employer and thus could not be paid for such noneconomic damages as pain and suffering by her employer under the workers compensation act. It also contemplated that the "specific" payment received by Mrs. Sivilla for permanent injury payable under the workers compensation act was "capped" by a statutory formula limited by maximum weekly wages and multiple of weeks assignable to particular injuries. Furthermore, the argument mistakes what happened here. The $750,000 verdict awarded to Phillips by the jury was awarded to Phillips, not Mrs. Sivilla; and it was awarded because the jury found there was an express bilateral contract wherein St. Mary's agreed to indemnify Phillips. CT Page 9999
 IV.
St. Mary's also contends it is entitled to have the verdict set aside and judgment entered notwithstanding the verdict because the court erred by creating a statutory scheme, not contemplated by the legislature and against public policy, using § 52-572(c) and § 31-293 of the Connecticut General Statutes to allow the plaintiff a double recovery. This court did not "create" the statutory scheme found in § 52-572t(c) and § 31-293. The legislature did. This court was bound to implement these and other laws the General Assembly adopted. Mrs. Sivilla has received no double recovery by virtue of the verdict on the counterclaim. In the $750,000 verdict on its counterclaim, Phillips recovered from St. Mary's what it paid her, something for which the jury found both Phillips and St. Mary's bargained. The court rejects this argument. St. Mary's cites no "policy" it claims is offended. None is apparent to the court. St. Mary's was a large enough hospital to have its own electronic equipment repair and purchasing departments and was free to take on or reject the indemnity obligation to which the jury found it has agreed.
 V.
As an additional ground for its motions, St. Mary's contends that the court erred by characterizing this cause of action as a separate and distinct action in contract for the reason that this action falls under the umbrella of the Products Liability Act and, therefore, no separate and distinct legal relationship exists between the parties and thus, no contract claim for indemnification exists. It also asserts that the court erred by allowing an action in indemnification under the Products Liability Act, which was prohibited pursuant to §52-572r(d) of the Connecticut General Statutes, for the reason that the defendant on the counterclaim is immune from liability pursuant to § 31-284.
Parties are free to enter into contracts in which one party undertakes liability to another for conduct for which it might otherwise be immune under statute. The jury could reasonably have found from all of the evidence and inferences to be drawn from it that St. Mary's Hospital undertook such a liability by express contract. It could have found there was a separate and distinct legal relationship between St. Mary's and Phillips, namely an express contract providing for indemnity. CT Page 10000
St. Mary's argument that the products liability law bars indemnity might have some merit with respect to a common law theory of active-passive negligence, where a party seeks common law indemnity apart from any express contractual rights. See:Kaplan v. Merberg Wrecking, 52 Conn. 405 Conn. 207 A.2d 732.
However, the court refused the plaintiff's request to submit the case to the jury on such a common law active-passive theory because its reading of the holding in Malerba v. CessnaAircraft, 210 Conn. 189, 196, which held that common law indemnity actions are not authorized against a party which is otherwise immune from liability.
Nonetheless, St. Mary's was free to contract to take upon itself a liability to indemnify Phillips for actions for which it might have otherwise been immune. This argument of St. Mary's is without merit.
 VI.
St. Mary's urges that its motions should be granted on another ground, that the verdict was against the evidence. It urges that the counter claimant failed to establish that a contract existed or the terms of that contract, more specifically: (1) the alleged contract, if it existed, does not contain an authorized purchaser's signature; (2) at no time did the counter claimants offer evidence that the parties had contracted on similar matters in the past or developed a continuing course of conduct to interpret the terms of the alleged agreement which was ambiguous and incomplete; (3) the alleged contract, if it existed, was ambiguous and the only document offered by the counter claimants which was signed by the defendant on the counterclaim, was a purchase order which does not acknowledge acceptance of the terms of the alleged agreement offered by the counter claimants; (4) there was no evidence to support a claim that the terms and conditions allegedly on the back of the quotation offered by the counter claimant was ever received, reviewed or accepted by an authorized representative of the defendant on the counterclaim; and (5) the documentary evidence which allegedly evidenced a meeting of the minds for a contract or acceptance of the proposed agreement by the defendant on the counterclaim, was not offered into evidence and did not exist. CT Page 10001
Despite these contentions by St. Mary's, there was evidence from the collective testimony of Messrs's. Lurix, Mason, and McQuillan of Phillips, and the inference to be drawn from it, to permit the jury to find that an original proposal was made on a standard Phillips proposal form, the back of which contained "conditions of sale", including the indemnity clause in Paragraph 14 and controlling provision clause in Paragraph 1. There was also evidence before the jury in the form of Exhibit 70, a purchase order from St. Mary's. On this purchase order alongside the printed word "DESCRIPTION", St. Mary's had typed the word "confirming" and referenced the same stock numbers found in the Phillips proposal. There was evidence that this "confirming" purchase order was signed by Mr. O'Hanley, who at that time headed the hospital purchasing department, and by virtue of that was by inference a sophisticated purchaser. There was also evidence of the continuous sending of other documents after the purchase order on which the same standard conditions appeared without change, and that these were not questioned by St. Mary's. There was evidence that the equipment was ultimately accepted. There was evidence in the form of St. Mary's purchase order referencing the very numbers in Phillips proposal, from which the jury could have inferred that St. Mary's had received the original Phillips proposal and that it confirmed its terms. The court rejects the contention that the verdict was against the evidence.
As additional grounds to overturn the verdict, St. Mary's maintains the verdict was against the evidence for the reason that the alleged hold harmless clause was ambiguous and no evidence was introduced by the counter claimant that the terms of the hold harmless clause were breached, more specifically: (1) there was no evidence to indicate that the operation of the subject equipment was not in compliance with the standards of the National Bureau of Standards and the Department of Health, Education and Welfare; (2) there was no evidence that the personnel operating the subject equipment were not duly qualified; and (3) there was no evidence that the personnel were operating the subject equipment in an unreasonable and unsafe manner. The court does not agree. The court does not find provisions of paragraph 14 ambiguous. A fair reading of Paragraph 14 indicates that the first sentence of it places an obligation of the buyer to use the apparatus in a safe and reasonable manner utilizing competent personnel. A fair reading of the second sentence of that paragraph indicates that the buyer was obligated to indemnify and hold harmles [harmless] Phillips CT Page 10002 from all claims, lawsuits and judgments arising out of use of the product unless caused by Phillips' negligence. Furthermore, there was evidence from which the jury could have found that: 1) the manufacturer's instruction manual was not kept in the operating room; 2) this manual should be so kept there; 3) neither technician who operated the equipment the day of Sivilla's injury knew that such a manual was available; 4) neither had read it; 5) Joseph Kane, the hospital's Director of Clinical Electronic Services found the latching mechanism which held the C-Arm to the overhead to be functioning properly after the accident without sign of excessive wear, misadjustment or looseness; 6) Mr. Kane reported in writing on August 8, 1990 that: "In my opinion someone had failed to secure the mechanical latch properly. The accident was due to human error rather than a defect in the equipment"; 7) after Mrs. Sivilla's injury, Kane actually physically hung on the C-Arm with his full body weight, and although the jury could have seen he is of medium build, he could not cause it to unlatch; 8) the first x-ray technician took "responsibility" after she had learned Mrs. Sivilla had been hurt; 9) the second x-ray technician never checked the latching before she used it to see that it had been properly connected, although she had not set it up; 10) the hospital had a system where very often one tech set up and attached the arm which another later used; 11) the hospital had no protocol or system where a technician who had not personally set up the armature, checked to see if it were properly latched, before utilizing it; 12) prior to Mrs. Sivilla's lawsuit, no hospital representative ever notified Phillips that the lock had failed or claimed the product was defective and Phillips's first awareness of the injury came much later through Mrs. Sivilla's representatives; 13) an expert in x-ray equipment, Mr. Corso, inspected the equipment and found that there was no defect in it or in its design and that if used according to its operating instructions, it was safe; 14) according to Corso, safe use required reading of and use according to the manufacturer's instructions by an operator with respect to this or similar equipment prior to any use. The court is therefore unpersuaded by St. Mary's arguments that there was no evidence. Because of this evidence before the jury, and the logical inferences to be drawn from it and the other evidence in the case, the court finds no basis for setting aside the verdict based on the hospital's seventeenth contention that "[t]he court erred in failing to charge out of the claim allegations of negligence, except for the claims of alleged negligent operation." CT Page 10003
On recharge, the court charged the jury that they should consider the allegations of St. Mary's breach of the duty of care by allowing the product to be operated by other than duly qualified personnel in a safe and reasonable manner, failing to supervise use of the product to ensure compliance with the operating instructions of the manufacturer, failing to reasonably inspect the product, failing to properly train personnel in use of the product, and permitting personnel to operate it in a manner, it knew or should have known was not safe or proper. The court charged out allegations of negligent maintenance, repair or inspection for repair. As to all of the specifications which the jury was to consider, the court told the jury to consider the evidence in the case. The jury could have reasonably found for Phillips on these specifications.
 VII.
The hospital also urges the motions should be granted on the ground that [t]he court erred in admitting evidence of transactions between the counter claimant and other corporate entities and individuals which were irrelevant, immaterial and prejudicial to the defendant on the counterclaim. The evidence from Phillips was that it always used a standard preprinted form with printing on both front and back of it, when making sales proposals to customers. Since the hospital had destroyed the original of the Phillips proposal, it could not be introduced into evidence. Evidence of the proposed form Phillips always used by admitting documents from other transactions, including the indemnity and general conditions was not only probative, but probably the only way it could be proved that the conditions on the rear of the proposed form were submitted to St. Mary's. Copies of typical proposal forms used in other transactions with purchasers other than St. Mary's were probative for that purpose. There was nothing prejudicial about evidence of these other transactions. It was up to the jury to determine what weight to give them. The court is unpersuaded by this argument.
 VIII.
As another ground for its motions, the plaintiff urges that the court erred in admitting evidence of prior settlement negotiations, including a motion for stipulated judgment, a three page recommended settlement opinion by Judge Zampano which contained hearsay and double hearsay, and testimony by the plaintiff, Eleanor Sivilla, of Sta-Fed proceedings. The court CT Page 10004 admitted no evidence of settlement negotiations between Phillips and St. Mary's. The court did admit evidence of the stipulated judgment between Mrs. Sivilla and Phillips. The evidence of the stipulated judgment which the court, Pellegrino, J., adopted was relevant to the indemnity agreement which was before the jury. That indemnity agreement set forth an obligation on the purchaser to indemnify for claims, demands and judgments. Since the reasonableness of Phillips payment to Mrs. Sivilla was at issue, it was further evidence of what the nature of her claims or demand was. It was reasonably trustworthy evidence as to that issue where communicated to and reported by a retired federal judge mediating the dispute, and relied upon by the party making the payment as a basis for settling with her. It was the best evidence of the judgment. Since Judge Pellegrino simply granted the motion for stipulation, the judgment would have otherwise been unintelligible without the motion to which it referred. The court finds this argument lacking in merit.
 IX.
The hospital's reliance on a general rule excluding evidence of settlement negotiations is misplaced in a cause of action for indemnity where the negotiations were not between the other party to the lawsuit for indemnity. Had Phillips and Sivilla flipped a coin or consulted a ouija board to arrive at a settlement of the claim against Phillips, the jury would have been entitled to know of that evidence. The fact that they submitted to mediation and the evidence of its process was something the jury was entitled to weigh. The court rejects St. Mary's motions on this ground. Phillips was entitled to offer evidence of the circumstances of its settlement with Mrs. Sivilla to prove it was reasonable.
 X.
The hospital as an additional ground for overturning the verdict states that the court erred in allowing the testimony of the plaintiff, Eleanor Sivilla, regarding medical procedures she underwent as she was not qualified as a medical expert. "The difference between so called "fact" . . . and "opinion" is not a difference between opposites or contrasting absolutes, but a mere difference in degree with no recognizable line to mark the boundary." McCormick on Evidence, Fourth Edition, Practitioner Treatise Series, Vol. 1, Strong, Ch. 3, § 11 p. 42-43. There is no conceivable statement, however, specific, detailed and CT Page 10005 "factual", that is not in some measure the product of inference and reflection as well as observation and memory. Id. The court recalls one objection to a question posed to Mrs. Sivilla by Phillips about the normal procedures carried out in the surgical suite during gall bladder surgery which related to her competency to testify about these matters. This question was a predicate to her further testimony surrounding the injury she sustained when the x-ray arm dropped on her while she assisted in gall bladder surgery. The court permitted this testimony over the objection once it had established she had thirty years experience as both scrub nurse and circulating nurse in the surgical suite in St. Mary's Hospital. There was substantial additional testimony from Mrs. Sivilla entered into evidence without objection concerning her treatment for her injuries. Mrs. Sivilla was competent to testify about medical procedures and medication administered to her. It was her body. The counterclaim defendant took her as it found her, an injured registered nurse of over thirty years experience trained and employed by St. Mary's. Evidence as to the facts of her treatment for her injuries was not less relevant or fairly probative merely because as such a person she might have been more keen in her direct and inferred observations of the treatment of her own body. Furthermore, it could hardly be an unfair surprise to St. Mary's that Mrs. Sivilla would be acutely aware of the facts of her treatment. The hospital had trained her in its nursing school, employed her for decades in its surgical suite, and treated her for her job related injuries which ultimately resulted in this lawsuit.
 XI.
As another reason for overturning the verdict, St. Mary's contends that [t]he court erred in allowing Attorney William Sweeney to testify as he was neither disclosed nor qualified as an expert, nor was he a fact witness who had any information germane to the underlying incident. In addition, it urges it was an error to allow him to testify to what evidence he had intended to offer if the original action had been tried and to what occurred at the Sta-Fed mediation proceedings, as this testimony was irrelevant, immaterial, prejudicial and speculative.
Mr. Sweeney was attorney for Mrs. Sivilla. As such he was in a position to offer evidence as to what evidence he had gathered and would have mustered at trial. This was factual CT Page 10006 information which was elicited from him. It was germane. Phillips was required to prove to the jury that the $750,000 it paid to Mrs. Sivilla was reasonable in light of the strength and weaknesses of the underlying case and the information presented to the mediation tribunal which recommended the settlement. Evidence Sweeney had prepared to offer, but was not ever required in the underlying case because it settled, was factual, not opinion or speculation. In fact, St. Mary's itself ultimately called Sweeney's expert witness in the case as its own witness in the indemnity trial which resulted in the verdict of $750,000 against St. Mary's. The jury was charged that two considerations it must entertain in assessing damages were: (1) what elements Mrs. Sivilla would have had to prove in her product liability action and the likelihood of her prevailing and (2) the elements of damages a jury hearing her claim would have to consider. Sweeney was competent to give the jury factual information about the evidence on these subjects which he prepared and probably would have offered had he tried the case to a verdict instead of settling it.
 XII.
The court will spend little time on the next ground St. Mary's points to as grounds for overturning the verdict, namely denial of permission to file a motion for summary judgment. This was in the court's discretion. The rules clothe a judge with that power so that such motions which could have been filed far earlier, are not filed when trial seems imminent to delay the inevitable. The court is unpersuaded by this ground.
 XIII.
As a next ground, the hospital urges the verdict should be overturned because the court referred to the undisputed fact that the hospital had destroyed its files. The original Phillips proposal to St. Mary's for the sale of the x-ray equipment had been destroyed by the hospital. Since no other copy existed of both front and back of that original, proof of what it contained could only be offered through secondary evidence as to what the form used had always contained. That was the purpose of mentioning this fact. The court neither suggested nor invited any negative inference and the hospital was permitted ample opportunity to offer evidence that this document was destroyed along with others as a part of a periodic general destruction of records. In a jury charge, the court has CT Page 10007 the right to mention and comment upon evidence to properly explain the application of the rules of law. The court rejects this argument.
 XIV.
The hospital also contends that the court erred in charging the jury on the doctrine of res ipsa loquitur, as the evidence contra-indicated such a charge especially in light of the fact that this is a products liability action, and because the court's charge made it appear that liability rested solely on the issue of control.
In fact, the court charged that there were three necessary elements: (1) that no injury would ordinarily result from the apparatus unless it had been carelessly inspected, operated or used (2) that the hospital was in control from the date of training by the manufacturer until Mrs. Sivilla's injury to the exclusion of Phillips and Mrs. Sivilla (3) the condition of this device falling happened irrespective of voluntary action on Mrs. Sivilla's part at that time and there was nothing she could do to avoid it.
The counterclaimant Phillips was entitled to have the matter submitted to the jury on any theory supported by the pleadings and evidence.
A fair reading of the charge did not rest the application of the doctrine solely on "control" as the hospital claims.
 XV.
The hospital urges as additional reason why the verdict should be set aside, that the court erred in failing to charge the jury that the counter claimant's claim as to what constituted the alleged contract was limited to only eight (8) documents as set forth in the counter claimant's answers to the requests to admit. The court charged the jury in such a way that it was made clear that the original proposal had not been signed, and that Phillips was relying on several documents which were in evidence. There was no claim otherwise. Furthermore, the jury was instructed on the binding effect of current pleadings. The court believes that its change on this point was correct in law and sufficient to guide the jury. CT Page 10008
 XVI.
St. Mary's also contends its motions should be granted because the court erred by both allowing as exhibits and by charging the jury regarding Connecticut General Statute § 19a-63
and Connecticut State Regulation § 19a-25d-3, for the reason that there was no claim that the statute or regulation was violated, nor was there evidence that the language of the statute or regulation satisfied the requirements of the alleged contract as to either the National Bureau of Standards or the Department of Health, Education and Welfare.
There was evidence from which the jury could have concluded that St. Mary's had not complied with a regulatory requirement found in § 19-25d-3(b)(2) which provided that "The owner shall assure that all x-ray equipment under his control is operated only by individuals adequately instructed in safe operating procedures and competent in safe use of the equipment." The jury could have found that neither x-ray technician had ever read the x-ray machine's operating manual, did not know it was available, and that they should have read it to operate safely. There was also evidence that the hospital's clinical electronic services director concluded the machine fell upon and injured Mrs. Sivilla because of operator error in failing to secure the latch. There was also evidence that operator manuals were not kept in the surgical suite but should have been. The court will not repeat additional evidence already cited as to unreasonable and unsafe operation.
The evidence allowed was relevant to the contract which the jury found existed. Paragraph 14 provided that the equipment had to be operated not just in compliance with the standards of the National Bureau of Standards and Department of Health Education and Welfare, but also in "a safe and reasonable manner. The contractual requirement of general safe operation precedes the specific requirements as to Bureau of Standards and H.E.W. Standards and indicates these later standards were a further requirement. Evidence of State Health Department regulations was not admitted because any per se negligent violation of them was alleged. It was admitted to the extent the jury wished to give them weight in determining compliance with the reasonable person's standard. In the same way, OSHA regulations have been admitted in similar cases. See: Wendlandv. Ridgefield Construction Services, Inc., 184 Conn. 173, 181439 A.2d 954. Common Law Judging In A Statutory World; an CT Page 10009 address. Ellen Ash Peters, University of Pittsburgh Law Review, Summ. 1982, p. 995-1011. St. Mary's argument is without merit.
St. Mary's also claims that the court erred in not admitting into evidence a copy of General Statute § 19a-65 charging the jury that the purpose of regulation 19a-25a-3 was to ensure that patients "receive the least exposure to x-rays reasonably achievable." The regulation is not limited simply to radiation protection. The court rejects this ground as well.
 XVII.
As a last reason which the hospital argues represents grounds for setting aside the verdict, the hospital asserts that the court erred in charging out its defenses regarding statute of limitations, pursuant to §§ 52-577a(b), 52-581 and 52-576a of the Connecticut General Statutes, as the counterclaim was time-barred.
The hospital argues that Connecticut General Statutes §52-577a(b) deals with the exclusive way by which a product seller may implead a third party and states that such impleading must be done "within one year from the date the cause of action brought" by the first party plaintiff is returned to court. St. Mary's contends that this is an inescapable rule of the statutory scheme which applies to this case and it was error not to give a charge on this issue. St. Mary's urges that the legislature has provided for statutes of limitations for both written and oral contracts. The hospital asserts that the counter claimant must properly have commenced suit within these statutes, C.G.S. §§ 52-576 and 52-581.
The court charged all of these statutes of limitations out because the court found the jury could not have reasonably found for St. Mary's on the basis of any of them.
The defendant had asserted three statutes of limitations defenses to this action.
FIRST, the defendant asserted that the one year statute of limitations applicable to an oral contract, General Statutes § 52-581, bars this action. As submitted to the jury, this action was not based on an oral contract, and therefore § 52-581
does not apply. In this case the jury would either find that written contract to indemnify existed, expressed in part in Paragraph 14, or that no contract existed. The evidence CT Page 10010 therefore did not warrant submitting that defense to the jury.
SECOND, the defendant asserted that the three year statute of limitations applicable to a tort action, General Statutes § 52-577, barred this action. This claim fails for two reasons:
1. This action is not based on a tort theory, and therefore § 52-577 does not apply. This action is based on a contract theory of indemnity.
2. Even if this action were deemed to be in part based on a tort theory, the right of indemnification governs when the tolling of the statute of limitations occurs. The case was tried on the basis of evidence of a judgment entered against Phillips in favor of Mrs. Sivilla for which Phillips sought indemnity on the basis of an agreement which it alleged required St. Mary's to indemnify it. The cause of action thus arose when the judgment entered and the indemnitee Phillips suffered loss. The right of indemnification in this case arose at the time that the judgment payment was made to the injured party by the plaintiff. Calamita v. DePonte, 122 Conn. 20, 187 A. 129
(1936). Judgment entered on February 8, 1995 and was paid shortly thereafter. Therefore, the plaintiff filed the present action within the statutory period under § 52-577, even if §52-577 were applicable and a jury could not have reasonably found otherwise.
THIRD, the defendant asserts that the one year statute of limitations applicable to impleading a party in a product liability case, General Statutes § 52-577a, bars this action. This claim fails for three reasons:
1. This action is not based on product liability. This action is based on contract indemnity and therefore § 52-577a
does not apply.
2. Even if this action were based on a product liability, St. Mary's, by intervening as a plaintiff in Mrs. Sivilla's suit, was already a party to the original action when the counterclaim was filed, and, therefore, the plaintiff in this case was not required to implead the defendant, as mandated by § 52-577a. The plaintiff was already a party.
3. The recently enacted statute of limitations applicable to indemnification suits, General Statutes § 52-598a, extends the CT Page 10011 time period for which a party may bring an action for indemnification, notwithstanding the time frame embodied in §52-577a. General Statutes § 52-598a applies retroactively to pending cases, such as this because this statute is a procedural device which sets out when and how an already existing substantive right may be exercised. North Street ElderlyLimited Partnership v. Kapetan, Inc., 11 Conn. L. Rptr. 1 (March 14, 1994, Lewis, J.). The plaintiff commenced and filed the present counterclaim against the defendant with the clerk within the time period prescribed in § 52-598a, and a reasonable jury could not have found otherwise.
Section 52-576 requires any action on any simple, or implied, or written contract to be brought within six years of the date it accrues. Because the action accrued in 1995, and the jury could not have reasonably found otherwise, the court rejects this contention as well.
For all of these reasons the motions for directed verdict, to set aside the verdict and for judgment notwithstanding the verdict are denied.
FLYNN, J.