[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
The defendant, Hartford Hospital, has moved to strike the Third Count of the complaint in this action in which the plaintiff seeks damages as a result of the defendant's alleged CT Page 8359 failure to allow him to continue in a three-year training program in cardiology. The First Count of the complaint provides in pertinent part:
 3. On or about February 11, 1993, Dr. Jamal and Hartford Hospital entered into a written agreement whereby Dr. Jamal would provide professional services to Hartford Hospital and Hartford Hospital would provide payment and a course of graduate medical education to Dr. Jamal. [Complaint incorrectly alleges that a copy of the written agreement is attached to the complaint.]
 4. Dr. Jamal faithfully discharged his obligations under the contract in accordance with the terms of the contract and the House Staff Manual of Hartford Hospital.
 5. On June 4, 1993, Hartford Hospital, through one Dr. Waters, advised Dr. Jamal that Hartford Hospital would no longer honor its contract with Dr. Jamal.
 6. As of the date Hartford Hospital breached its contract with Dr. Jamal, Dr. Jamal was at or near the end of the first year of a three-year training program in cardiology. Accordingly, in order to complete his training program, Dr. Jamal had to locate a training position at another hospital and, because of the requirement that applicants to such programs make application a (sic) least a year in advance, was thereby required to delay his training for a year.
 7. In connection with breaching its contract with Dr. Jamal, Hartford Hospital wrongfully refused to credit Dr. Jamal with the year of cardiology training he had already completed at Hartford Hospital, and so set back Dr. Jamal's training yet another year.
 8. The two-year delay in completion of Dr. Jamal's training had the natural result of delaying Dr. Jamal's commencement of a cardiology practice for two years, with a resulting loss of income.
The Third Count of the complaint consists of the allegations set forth above with the following language added in a final paragraph:
 9. In so breaching it (sic) agreement with Dr. Jamal and in so disrupting Dr. Jamal's career, Hartford Hospital acted outrageously and knew or should have known that its actions would inflict upon Dr. Jamal mental distress, and Dr. Jamal suffered severe mental and emotional distress as a result. CT Page 8360
The function of a motion to strike is to test the legal sufficiency of a pleading. Practice Book 152; Ferryman v. Groton,212 Conn. 138, 142, 561 A.2d 432 (1989); Mingachos v. CBS, Inc.,196 Conn. 91, 108, 491 A.2d 368 (1985). In deciding a motion to strike the trial court must consider as true the factual allegations, but not the legal conclusions set forth in the complaint. Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348,576 A.2d 149 (1990); Blancato v. Feldspar Corp., 203 Conn. 34,36, 522 A.2d 1235 (1987).
In order to sustain a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was severe. Delaurentis v. New Haven, 220 Conn. 225, 266, 267,597 A.2d 807 (1991).
To establish that conduct is sufficiently "extreme or outrageous" to state an intentional infliction of emotional distress claim, a plaintiff must assert more than unpleasant or uncomfortable behavior on the part of the employer. In Barbuto v.The William Backus Hospital, No. 105452, 1995 Ct. Sup. 4404
(Superior Court Judicial District of New London at Norwich, April 13, 1995, Hendel, J.), the plaintiff, a nurse, alleged that the defendant hospital had promised that she could continue to participate for "as long as she wanted" in an employment plan whereby she received enhanced compensation and benefits in return for working in accordance with a particular schedule. Thereafter, the hospital allegedly refused to allow the plaintiff to continue to participate in the employment plan. In granting the defendant's motion to strike the complaint the court stated:
 The rule which seems to have emerged under this cause of action is that "there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Emphasis in original; citation omitted; internal quotation marks omitted.) Id., 254 n. 5. The Restatement states: CT Page 8361
 Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
 Restatement (Second), Torts § 46, comment (d), quoted in Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 20 (1991, Berdon, J.).
Whether conduct is extreme or outrageous is for the determination of the court in the first instance. Diemond v.American Red Cross, No. CV 94 0533021, 1995 Ct. Sup. 208
(Judicial District of Hartford/New Britain at Hartford, Jan. 9, 1995, Hennessey, J.); Kinter v. Nidec-Torin Corp., 662 F. Sup. 112,114 (D.Conn. 1987).
In Kinter a former employee brought breach of contract, fraudulent misrepresentation, and intentional infliction of emotional distress claims against his former employer alleging that he had been terminated after two months of employment despite the employer's representation that he would be guaranteed employment for fourteen months. The court granted the employer's motion to dismiss (the federal equivalent of Connecticut's motion to strike) the plaintiff's claim for intentional infliction of emotional distress, holding:
 even when accepted as true and interpreted in a light most favorable to plaintiff, plaintiff's [intentional infliction of emotional distress claims], based for the most part upon misrepresentations regarding plaintiff's prospects and the company's past performance, does not rise to the level of "extreme and outrageous conduct" necessary to support a claim for intentional infliction of emotional distress.
Kinter, 662 F. Supp. at 114.
Other Connecticut courts have granted motions to strike intentional infliction of emotional distress claims against employers because the alleged conduct was not "extreme or CT Page 8362 outrageous." See, e.g., Ziobro v. Connecticut Institute for theBlind, 818 F. Sup. 497 (D.Conn. 1993) (granting summary judgment because the employer's termination of employee for writing an anonymous letter accusing a fellow employee of child abuse before properly investigation whether employee had written the letter was not "extreme and outrageous" conduct); Reed v. Signode Corp.,652 F. Sup. 129, 136 (D.Conn. 1986) (rejecting a claim based on the employer's refusal to give leave and ultimately rehire an employee who discovered he had cancer); Rosario v. Firing, 8 CSC 874 (Conn.Sup. July, 1993) (rejecting a claim based on the defendants' circulation of a poster depicting the plaintiff as "John of the Week").
In this case, as in the cases referred to above, the plaintiffs allegations fall far short of the demanding standard of extreme and outrageous conduct necessary to state a cause of action for intentional infliction of emotional distress. The plaintiffs claim for infliction of emotional distress is merely a claim of breach of contract that the plaintiff characterizes as "outrageous." The Third Count fails to describe any conduct other than the defendant's breach of contract and refusal to credit the plaintiff with a year of cardiology training. If the defendant did engage in such conduct it was wrongful, but certainly not extreme or outrageous for the purpose of establishing a claim for intentional infliction of emotional distress.
For the foregoing reasons, the Motion to Strike the Third Count is granted.
By the court,
Aurigemma, J.